[No. S163577. Aug. 10, 2009.]

IMPERIAL MERCHANT SERVICES, INC., Plaintiff and Appellant, v. BRANDY G. HUNT, Defendant and Appellant.

382

COUNSEL

Law Offices of Clark Garen and Clark Garen for Plaintiff and Appellant.

Hefner, Stark & Marois and Ronald H. Sargis for California Association of Collectors, Inc., as Amicus Curiae on behalf of Plaintiff and Appellant.

Paul Arons; The Berg Law Group, Irving L. Berg; Horwitz, Horwitz & Associates and O. Randolph Bragg III for Defendant and Appellant.

OPINION

CHIN, J.—Civil Code section 1719[1] permits a payee seeking to recover on a dishonored check to collect a service charge, or treble the amount of the dishonored check if certain statutory requirements are met. Section 3287 governs the award of prejudgment interest on damages. We granted a request by the United States Court of Appeals for the Ninth Circuit (Cal. Rules of Court, rule 8.548) to decide a question of California law: whether a debt collector recovering on a dishonored check may recover both a service charge under section 1719 and prejudgment interest under section 3287.

We conclude that the statutory damages prescribed in section 1719 are exclusive in the sense that a debt collector who recovers a service charge pursuant to section 1719 may not also recover prejudgment interest under section 3287.

## I. FACTUAL AND PROCEDURAL HISTORY[2]

On July 5, 2004, Brandy Hunt wrote a $137.15 check to Pak 'n Save, a supermarket operated by Safeway, Inc. (Safeway). The check was returned unpaid due to insufficient funds. Safeway referred the matter to Imperial Merchant Services, Inc., doing business as Check Recovery Systems (CRS) for collection.

CRS then mailed Hunt two collection demands. The second letter demanded payment of the check amount, a $35 service fee under section 1719, and $7.26 in interest under section 3287, for a total of $179.41.

---

[1] All further statutory references are to the Civil Code, unless otherwise indicated.

[2] The facts and procedural discussion are taken largely from the United States District Court opinion in a related class action filed by Brandy G. Hunt. (*Hunt v. Check Recovery Systems, Inc.* (N.D.Cal. 2007) 478 F.Supp.2d 1157 (*Hunt I*).)

Hunt filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Northern District of California (the bankruptcy action). Shortly thereafter, Hunt filed a putative class action against CRS in the United States District Court for the Northern District of California seeking damages under the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (the FDCPA action). Hunt asserted that CRS's demand for a section 1719 service fee precluded CRS from seeking interest on the amount of the unpaid check. Hunt alleged that CRS thus violated the FDCPA by demanding interest to which it was not entitled under California law.[3]

On December 16, 2005, CRS filed a claim in the bankruptcy action for $250, a sum intended to cover the amount of the unpaid check, a $35 service fee and interest. On October 31, 2006, the bankruptcy court filed a judgment of nondischargeability (the bankruptcy judgment) in favor of CRS in the amount of $614.45, consisting of $172.15 for the amount of the check and the service fee and $442.30 in costs, but nothing for interest payments. The bankruptcy court concluded that because CRS was awarded a service fee under section 1719, it was not entitled to interest under section 3287. CRS filed an appeal from the bankruptcy judgment in the district court.

Meanwhile, in the FDCPA action, Hunt and CRS filed cross-motions for summary judgment on the question of whether CRS, having demanded payment of a service fee under section 1719, was additionally entitled to interest under section 3287. In a published opinion filed on March 21, 2007, the district court (Jenkins, J.) held that California law precluded CRS's demand for interest and that its demand letters thus violated United States Code sections 1692e(2)(A) and 1692f(1). (*Hunt I*, *supra*, 478 F.Supp.2d at p. 1169.) Accordingly, the district court granted Hunt's motion for summary judgment in part (as to the causes of action based on these provisions of the FDCPA) and denied CRS's summary judgment motion. The court also denied CRS's request to enter partial summary judgment (Fed. Rules Civ. Proc., rule 54(b), 28 U.S.C.) or to certify the case for immediate appeal (28 U.S.C. § 1292(b)).

While the summary judgment motions in the FDCPA action were pending, CRS's appeal from the judgment in the bankruptcy action was transferred to

---

[3] The district court consolidated Hunt's action with another case against CRS filed by Brian Castillo. (*Hunt I*, *supra*, 478 F.Supp.2d at p. 1158.) The consolidated action specifically alleged that CRS used false, deceptive or misleading representations in violation of 15 United States Code section 1692e; falsely represented the character, amount, or legal status of a debt in violation of 15 United States Code section 1692e(2)(A); used unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 United States Code section 1692f; and exceeded the amount expressly permitted by law in violation of 15 United States Code section 1692f(1). (*Hunt I*, *supra*, 478 F.Supp.2d at pp. 1158–1159.) We refer to plaintiffs in the FDCPA action collectively as "Hunt."

Judge Jenkins. On May 17, 2007, the district court affirmed the bankruptcy action judgment "for the reasons stated in the opinion of this Court issued in [the FDCPA action]."

CRS appealed the district court's judgment in the bankruptcy action, denying interest, to the United States Court of Appeals for the Ninth Circuit. On May 12, 2008, the Ninth Circuit requested that this court decide the purely legal issue of whether, under California law, a debt collector may recover both section 1719 damages and section 3287 prejudgment interest on a dishonored check. (*Imperial Merchant Services, Inc. v. Hunt* (9th Cir. 2008) 528 F.3d 1129 (*Hunt II*).) On July 16, 2008, we granted that request.

## II. DISCUSSION

CRS claims that section 1719 and its legislative history do not prohibit the collection of both interest and the statutory service charge for a dishonored check. On the other hand, Hunt contends that the rules of statutory construction and the legislative history of section 1719 preclude collection of both amounts. As explained below, we agree with Hunt.

### A. *Section 1719*

Section 1719 sets forth the procedures for collecting on dishonored checks. Subdivision (a)(1) of that section provides: "Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for the amount of the check and a service charge payable to the payee for an amount not to exceed twenty-five dollars ($25) for the first check passed on insufficient funds and an amount not to exceed thirty-five dollars ($35) for each subsequent check to that payee passed on insufficient funds."

██ If the payee sends the checkwriter a certified letter seeking the amount due on a dishonored check, the debtor has 30 days from the date the written demand was mailed to pay the amount of the check, the statutory service charge, and the cost of mailing the written demand for payment. (§ 1719, subd. (a)(2).)[4] Failure to comply with subdivision (a)(2) renders the

---

[4] Section 1719, subdivision (a)(2), provides: "Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check if a written demand for payment is mailed by certified mail to the person who had passed a check on insufficient funds and the written demand informs this person of (A) the provisions of this section, (B) the amount of the check, and (C) the amount of the service charge payable to the payee. The person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge payable to the payee, and the

checkwriter liable for treble the amount of the outstanding balance on the check (the face value of the check minus any partial payments made within this 30-day window), which shall not be less than $100 or more than $1,500. (§ 1719, subd. (a)(2).) If a checkwriter is liable for treble damages, he is not required to pay the statutory service charge or the cost of mailing the written demand. (*Ibid.*)

Section 1719 is silent regarding the availability of prejudgment interest in addition to the fixed service charge. The federal court opinions that have addressed this issue have unanimously held that a debt collector is limited to the remedies explicitly prescribed in section 1719, which do not include prejudgment interest. (*Hunt I, supra,* 478 F.Supp.2d at p. 1171; *Palmer v. Stassinos* (N.D.Cal. 2004) 348 F.Supp.2d 1070, 1083 (*Stassinos I*); *Palmer v. Stassinos* (N.D.Cal. 2005) 419 F.Supp.2d 1151, 1153 (*Stassinos II*); *Irwin v. Mascott* (N.D.Cal. 2000) 112 F.Supp.2d 937, 947–948, 955; *Irwin v. Mascott* (9th Cir. 2004) 370 F.3d 924, 927–928.) Of these five opinions, however, only two, *Hunt I* and *Stassinos I*, explored in depth the issue presented here, i.e., whether a debt collector may recover both prejudgment interest under section 3287[5] and the service charge under section 1719. It appears that no California court has spoken on this issue.

■ Because this contention involves a question of statutory construction, our review is de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) We must look to the statute's words and give them "their usual and ordinary meaning." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) "The statute's plain

costs to mail the written demand for payment. If this person fails to pay in full the amount of the check, the service charge payable to the payee, and the costs to mail the written demand within this period, this person shall then be liable instead for the amount of the check, minus any partial payments made toward the amount of the check or the service charge within 30 days of the written demand, and damages equal to treble that amount, which shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500). When a person becomes liable for treble damages for a check that is the subject of a written demand, that person shall no longer be liable for any service charge for that check and any costs to mail the written demand."

[5] Section 3287, subdivision (a), states, "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."

meaning controls the court's interpretation unless its words are ambiguous." (*Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118]; see also *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 [67 Cal.Rptr.3d 468, 169 P.3d 889].) "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

Because section 1719 says nothing about the availability of interest in light of the service charge and treble damage provisions, the plain meaning rule provides no assistance. (See *Stassinos I, supra,* 348 F.Supp.2d at p. 1078.) We therefore address, in turn, the statutory construction and legislative history of section 1719.

B. *Statutory Construction and Legislative History of Section 1719*

1. *Statutory Construction*

■ Where more than one statutory construction is arguably possible, our "policy has long been to favor the construction that leads to the more reasonable result." (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 343 [250 Cal.Rptr. 268, 758 P.2d 596].) This policy derives largely from the presumption that the Legislature intends reasonable results consistent with the apparent purpose of the legislation. (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165–1166 [278 Cal.Rptr. 614, 805 P.2d 873].) Thus, our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224]; *People v. Simon* (1995) 9 Cal.4th 493, 517 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *Fields v. Eu* (1976) 18 Cal.3d 322, 328 [134 Cal.Rptr. 367, 556 P.2d 729].)

Like the other courts that have addressed this issue, we begin our statutory construction by focusing on subdivisions (a), (h), and (k) of section 1719. As noted above, subdivision (a)(1), (2) provides for fixed statutory damages and, alternatively, treble damages where the statutory requirements are met, "[n]otwithstanding any penal sanctions that may apply." (§ 1719, subd. (a)(1), (2).) Subdivision (h) states that "[t]he requirements of this section in regard to remedies are mandatory upon a court." (§ 1719, subd. (h).) Subdivision (k) states, in relevant part, that "[n]othing in this section is intended to condition, curtail, or otherwise prejudice the rights, claims, remedies, and defenses under Division 3 (commencing with Section 3101) of the Commercial Code

of a drawer, payee, assignee, or holder . . . in connection with the enforcement of this section." (§ 1719, subd. (k).)

■ Hunt argues that the Legislature's enumeration in section 1719, subdivision (k), of other remedies that coexist with subdivision (a)(1) and (2) impliedly excludes other remedies not specified therein. Hunt bases her argument on the rule of statutory construction *expressio unius est exclusio alterius*, or "to express or include one thing implies the exclusion of the other . . . ." (Black's Law Dict. (8th ed. 2004) p. 620, col. 2.) " 'Under the maxim of statutory construction, *expressio unius est exclusio alterius*, if exemptions are specified in a statute, [courts] may not imply additional exemptions unless there is a clear legislative intent to the contrary. [Citation.]' " (*Rojas v. Superior Court* (2004) 33 Cal.4th 407, 424 [15 Cal.Rptr.3d 643, 93 P.3d 260].) Hunt's reading of the statute effectively limits a debt collector to three remedies: (1) those expressly provided for in section 1719, (2) California criminal law, and (3) division 3 of the California Uniform Commercial Code, governing negotiable instruments. None of these remedies provides for the collection of prejudgment interest in this case.

■ On the other hand, CRS contends that the Legislature's addition of subdivision (k) does not imply that the remedies prescribed in section 1719 are exclusive. Instead, we should read section 1719 together with the rest of the Civil Code, which generally permits the recovery of interest on all debts. It is a "well-settled rule[] of statutory construction that, if possible, the codes are to be read together and blended into each other as though there was but a single statute [citations], and that the existence of a particular statute does not negate the effect of a general statute . . . ." (*Lara v. Board of Supervisors* (1976) 59 Cal.App.3d 399, 408–409 [130 Cal.Rptr. 668].) CRS argues that "[w]here . . . [multiple] codes are to be construed, they 'must be regarded as blending into each other and forming a single statute.' [Citation.] Accordingly, they 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.' " (*Tripp v. Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749], disapproved on another ground in *Frink v. Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476].)

CRS urges us to read section 1719 with sections 3302 and 3287, subdivision (a), as though they were "but a single statute." (*Lara v. Board of Supervisors, supra,* 59 Cal.App.3d at p. 408.) Section 3302 provides that "[t]he detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon." (§ 3302.) Section 3287, subdivision (a), provides in relevant part that "[e]very person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in

him upon a particular day, is entitled also to recover interest thereon from that day . . . ." Reading section 1719 together with sections 3302 and 3287, subdivision (a), CRS claims that it is legally entitled to interest payments in addition to section 1719's fixed statutory fee as a matter of California law.

■ However, CRS's argument that section 1719 should be read with the rest of the Civil Code would render subdivision (k)'s express exemption superfluous. If the Legislature had intended that all other civil remedies remained available to a payee seeking section 1719 damages, there would have been no need to include a provision to single out remedies pursuant to division 3 of the California Uniform Commercial Code. "Statutes must be interpreted, if possible, to give each word some operative effect." (*Walters v. Metropolitan Ed. Enterprises, Inc.* (1997) 519 U.S. 202, 209 [136 L.Ed.2d 644, 117 S.Ct. 660].) "We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 22 [276 Cal.Rptr. 303, 801 P.2d 1054].) Thus, the fact that the Legislature expressly designated specific damage remedies while omitting others, such as prejudgment interest, reflects that it intended the prescribed remedies to be exclusive.

### 2. Legislative History

An analysis of section 1719's evolution, general pattern of amendment, and the reasoning behind those amendments further reveals the Legislature's intent to limit recovery of damages to those explicitly prescribed in the statute.

#### a. The 1983 enactment

The Legislature enacted section 1719 in 1983. (Stats. 1983, ch. 522, § 1, p. 2269.) As enacted, section 1719 provided that if a check was dishonored, the checkwriter would be liable for the amount of the check plus "damages of treble the amount so owing" (no less than $100 but no more than $500) if the checkwriter failed to pay the check amount within 30 days of a written demand letter from the payee sent via certified mail. The purpose of the bill was "to provide a cost effective means for small businesses to collect unpaid accounts, and to deter bad check writing." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1226 (1983–1984 Reg. Sess.) as amended May 3, 1983, p. 2.) This legislative reference to the bill as a "cost effective" measure was a recognition of the then existing barriers to debt collection on bad checks. "Bad checks written for small amounts do not often justify either expensive criminal enforcement or the time the small business owner would need to devote to appear in court in order to collect on the debt." (*Ibid.*) By

authorizing treble damages in section 1719, the Legislature effectively incentivized small businesses to collect on dishonored checks written for small amounts.

### b. *The 1995 amendments*

In 1995, the Legislature amended section 1719 in two respects that are relevant here: it increased the treble damages cap from $500 to $1,500 in subdivision (a) and added subdivision (h), which makes section 1719 remedies binding on the courts. (Stats. 1995, ch. 134, § 1, pp. 526–527, 529.)

Subdivision (h) of section 1719 codified the decision in *Mughrabi v. Suzuki* (1988) 197 Cal.App.3d 1212 [243 Cal.Rptr. 438]. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 522 (1995–1996 Reg. Sess.) as amended June 22, 1995, p. 2.) In *Mughrabi*, the Court of Appeal reversed a trial court's decision to withhold treble damages despite the merchant's compliance with section 1719. The court observed that "[t]he manifest purpose of section 1719 is to discourage the issuance of bank checks, drafts or orders when the maker's funds are insufficient. By increasing the stakes for a defendant, it serves as a statutory incentive to refrain from the writing of bad checks." (*Mughrabi, supra*, 197 Cal.App.3d at p. 1215.) The court held that, because the "unambiguous" language of section 1719 mandated the imposition of treble damages whenever the statutory requirements were met, the trial court had no discretion in the matter and was required to grant the merchant's request for treble damages. (*Mughrabi*, at p. 1215.)

### c. *The 1996 amendments*

In 1996, the Legislature moved the treble damages provision to subdivision (a)(2) of section 1719 and added a service charge provision under subdivision (a)(1), which allowed the payee of a bad check to collect a fixed amount service charge of $25 or $35 in addition to the face amount of the check. (Stats. 1996, ch. 1000, § 1, pp. 5895–5896.) The addition of a fixed statutory service charge was in response to *Newman v. Checkrite California, Inc.* (E.D.Cal. 1995) 912 F.Supp. 1354 (*Newman*). (See Assem. Floor Analysis of Assem. Bill No. 2643 (1995–1996 Reg. Sess.) as amended Aug. 20, 1996, pp. 1–2 (Assembly Floor Analysis of Assembly Bill No. 2643).)

In *Newman*, the court held that a merchant who seeks to collect a dishonored check and demands that the debtor pay a service charge must prove the amount of the service charge is "commercially reasonable" under

section 2710 of the California Uniform Commercial Code.[6] (*Newman, supra*, 912 F.Supp. at p. 1368.) After *Newman*, merchants expressed concern about the onerous burden of having to prove the reasonableness of a statutory service fee every time a check was dishonored. (See Assem. Floor Analysis of Assem. Bill No. 2643, *supra*, p. 2.) Moreover, *Newman* appeared to be in tension with California court opinions that, in other contexts, did not require merchants to prove in each case the "commercial reasonableness" of charges and fees because of the impracticability, difficulty, and expense of proving actual damages. (Assem. Floor Analysis of Assem. Bill No. 2643, p. 2.) Accordingly, the Legislature added the provisions of subdivision (a)(1) to include a fixed service charge designed to "represent a reasonable endeavor to fix the probable loss resulting to the merchant . . . ."[7] (Assem. Floor Analysis of Assem. Bill No. 2643, p. 2.) The Legislature further amended subdivision (a)(2) to provide that the service charge could not be collected in the event that treble damages were recoverable. (§ 1719, subd. (a)(2).)

The Legislature in 1996 also added subdivisions (i) and (k). Subdivision (i) states: "The assignee of the payee or a holder of the check may demand, recover, or enforce the service charge, damages, and costs specified in this section to the same extent as the original payee." (§ 1719, subd. (i).) Although the legislative history is silent as to the reasons behind the addition of subdivision (i), it appears to have been largely driven by the *Newman* decision as well. In *Newman*, the court left unresolved the issue of whether an assignee of a bad check debt (e.g., a debt collection agency) may collect service charges under the statute to the same extent as the original payee. (*Newman, supra*, 912 F.Supp. at p. 1368.) The Legislature responded to that question in the affirmative by adding subdivision (i).

As noted above, subdivision (k) provides that the rights, claims, remedies, and defenses under division 3 of the California Uniform Commercial Code remain in full effect notwithstanding any of the provisions of section 1719. (§ 1719, subd. (k).) While the legislative history is also silent as to the reasons for the addition of subdivision (k), the Legislature appears to have been at least partially motivated by *Cohen v. Disner* (1995) 36 Cal.App.4th 855 [42 Cal.Rptr.2d 782] (*Cohen*). In *Cohen*, the plaintiffs argued that because former section 1719 articulated only a " 'stop payment' " defense,

---

[6] California Uniform Commercial Code section 2710 provides: "Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyers' breach, in connection with return or resale of the goods or otherwise resulting from the breach." (Cal. U. Com. Code, § 2710.)

[7] The Legislature set the maximum statutory fixed penalty at $35 "based upon a survey of [California Retailers Association] members and because the United States Supreme Court imposes a $35 charge for anyone bouncing a check payable to it." (Assem. Floor Analysis of Assem. Bill No. 2643, *supra*, p. 2; see U.S. Supreme Ct. Rules, rule 38(e).)

the defendants who had written dishonored checks were precluded from asserting other defenses for negotiable instruments otherwise available under division 3 of the California Uniform Commercial Code (Cal. U. Com. Code, § 3101 et seq.). (*Cohen, supra,* 36 Cal.App.4th at p. 859.) The court disagreed, and concluded that "the maker of a dishonored check may raise defenses under the [California Uniform Commercial Code] to establish that [a] check is unenforceable." (*Id.* at p. 857.) Shortly after *Cohen,* the Legislature added subdivision (k).

As explained below, the legislative evolution and the reasoning behind section 1719's amendments confirm that the Legislature intended that the statute serve as an exclusive damages scheme for the collection of dishonored checks.

First, the statutory scheme expressly provides for the collection of the face amount of the check and civil remedies of either (1) a service charge and mailing fees where a checkwriter pays within the 30-day period or (2) treble damages but no service charge or mailing costs where the checkwriter does not timely pay. It does not provide for the additional collection of interest. "As California and federal courts decided important issues regarding the construction of section 1719, the Legislature acted to incorporate those provisions into the statute. These inclusions demonstrate that the Legislature intends that section 1719 represent the sole recovery mechanism for bad debt collectors and that courts should not look beyond the statute unless failing to do so would result in an absurd interpretation." (*Stassinos I, supra,* 348 F.Supp.2d at p. 1083.)

We cannot conclude that the denial of prejudgment interest is an absurd result. The Legislature authorized fixed service charges so that merchants would be compensated for losses flowing from a dishonored check without having to prove actual damages. Thus, the service charge was intended to be a reasonable substitute for actual, short-term damages, including interest. (See Assem. Floor Analysis of Assembly Bill No. 2643, *supra,* p. 2 [referring to the statutory fee as a representation of "actual damage incurred" and a "reasonable endeavor to fix . . . probable loss"].) If the checkwriter refuses to pay within the 30-day window period, treble damages are recoverable instead of the statutory service charge. Such recovery "suggests that the treble damage provision is intended to cover *all* losses suffered as a result of the bad check." (*Stassinos I, supra,* 348 F.Supp.2d at p. 1082, italics added; see *Hunt I, supra,* 478 F.Supp.2d at p. 1166.) The recovery of the statutory remedies and the additional collection of prejudgment interest would therefore constitute impermissible double recovery. (Cf. *Greater Westchester Homeowners Assoc. v. City of Los Angeles* (1979) 26 Cal.3d 86, 103 [160 Cal.Rptr. 733, 603 P.2d 1329].)

Second, as discussed above, the Legislature implicitly precluded other civil remedies by expressly singling out division 3 of the California Uniform Commercial Code as an alternative civil remedy. (§ 1719, subd. (k).) When the Legislature added subdivision (k) to section 1719, it included "rights, claims, [and] remedies" under division 3 of the California Uniform Commercial Code in addition to that code's defenses in a section 1719 dispute that were at the heart of the *Cohen* decision. (*Cohen, supra,* 36 Cal.App.4th at p. 859.) Division 3 does not authorize the collection of prejudgment interest on a negotiable instrument unless the instrument itself otherwise provides for it. (Cal. U. Com. Code, § 3112, subd. (a)(1).) Were we to accept CRS's argument that all other civil remedies remain available to a payee or assignee seeking section 1719 damages, we would render the "rights, claims, [and] remedies" language of subdivision (k) superfluous. We decline to do so.

■ Finally, the addition of subdivision (i), which extended section 1719 rights to assignees, reflects that section 1719 is not only intended to be the exclusive remedy for bad check collections but one that replaces previously existing forms of relief. Treble damages are punitive in nature (*Hoban v. Ryan* (1900) 130 Cal. 96, 99 [62 P. 296]) and punitive damages generally inure only to the person damaged. (*People v. Superior Court* (1973) 9 Cal.3d 283, 287 [107 Cal.Rptr. 192, 507 P.2d 1400].) "As here, when the statute requires the court to grant recovery to a party not traditionally entitled to such recovery [i.e., an assignee], the Legislature has effectively conveyed its intention to replace previous forms of recovery with the statutory remedy provided. If the statutory remedy replaces previous forms of recovery, permitting interest on the amount of the check would result in double recovery." (*Stassinos I, supra,* 348 F.Supp.2d at p. 1083.)

We note that a merchant or other payee has the option of bypassing section 1719, if it deems the service charge to be inadequate, and of suing on the underlying obligation instead. Section 3310, subdivision (b)(3), contained in division 3 of the California Uniform Commercial Code, allows a merchant or other payee to enforce either the instrument or the obligation.[8] Thus, a payee who accepts a check for goods or services that is later dishonored may enforce the instrument, i.e., the returned check, by availing itself of the section 1719 statutory remedies. Alternatively, a payee may choose to enforce the obligation and seek damages, including prejudgment interest (§ 3302), based on breach of the agreement to pay for goods or services. (See, e.g., *Ballard v.*

---

[8] California Uniform Commercial Code section 3310, subdivision (b)(3), provides in pertinent part: "[I]f the check or note is dishonored and the obligee of the obligation for which the instrument was taken is the person entitled to enforce the instrument, the obligee may enforce either the instrument or the obligation. In the case of an instrument of a third person which is negotiated to the obligee by the obligor, discharge of the obligor on the instrument also discharges the obligation."

*Equifax Check Services, Inc.* (E.D.Cal. 1998) 27 F.Supp.2d 1201, 1206 (*Ballard*); *Abels v. JBC Legal Group, Inc.* (N.D.Cal. 2006) 434 F.Supp.2d 763, 766 (*Abels*).)[9]

### C. CRS's Other Claims

#### 1. Currie

Relying on *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109 [104 Cal.Rptr.2d 392, 17 P.3d 749] (*Currie*), CRS argues that absent a specific legislative statement to the contrary, section 3287 prejudgment interest is permitted in addition to the fixed damages under section 1719. *Currie* is distinguishable in several critical respects.

The issue in *Currie* was whether an employee was entitled to prejudgment interest on an award for backpay under Labor Code section 132a, which makes it unlawful to wrongfully deny an employee reinstatement because of an industrial injury. (*Currie, supra*, 24 Cal.4th at p. 1111.) We held that nothing in Labor Code section 132a expressly or impliedly precludes prejudgment interest. (*Currie*, 24 Cal.4th at p. 1116.) Because the Legislature was silent as to the availability of prejudgment interest, we determined that the intent of Labor Code section 132a was to make employee victims of discrimination whole, at least to the extent of their lost wages. (*Currie*, 24 Cal.4th at p. 1117.) We reasoned that "without prejudgment interest the backpay remedy may lose a significant portion of its value, and the employee left less than fully 'reimburse[d]' (§ 132a, par. (1)) for his or her lost wages." (*Currie*, 24 Cal.4th at p. 1117.) Accordingly, we concluded that "the [Workers' Compensation Appeals Board] may and must, when the criteria of Civil Code section 3287 are met, add to its awards reimbursing employees for lost wages and work benefits interest from the dates such wages and benefits would have become due had the employer not acted in violation of [Labor Code] section 132a." (*Currie*, 24 Cal.4th at p. 1119.)

Unlike the statute at issue in *Currie*, the legislative history and structure of section 1719 implicitly preclude an award of prejudgment interest. Additionally, whereas the employee in *Currie* would not have been made whole if the

---

[9] Hunt argues that CRS, as a debt collector, is only the holder of the check, does not have the same set of rights as a merchant seller, and is not entitled to prejudgment interest on the underlying obligation. (*Ballard, supra*, 27 F.Supp.2d at pp. 1206–1207 [debt collection agency was the "holder" of the check, not the obligee, and thus not entitled to enforce the underlying obligation].) On the other hand, CRS argues that the record shows that Safeway assigned it all of its rights, including those to damages for breach of contract or performance of the obligation. (*Abels, supra*, 434 F.Supp.2d at pp. 765–766.) However, we need not resolve that issue in this case. Regardless of the scope of the assignment, neither Safeway nor CRS is permitted to collect both prejudgment interest and the statutory service charge, because the demand for payment was made under section 1719.

statutory remedy were considered to be exclusive, CRS has made no similar showing. In contrast to the employee in *Currie*, a payee of a dishonored check is presumably made whole by the service charge or treble damages. If a payee deems the service charge to be inadequate, it may seek damages for breach of the underlying obligation, including prejudgment interest.

### 2. *Orloff*

Relying on *Orloff v. Los Angeles Turf Club* (1947) 30 Cal.2d 110 [180 P.2d 321] (*Orloff*), CRS contends that we should not strictly construe section 1719 to preclude other preexisting statutory remedies, such as prejudgment interest under section 3287. As with *Currie*, *Orloff* is distinguishable.

In *Orloff*, the plaintiff, an African-American, was twice ejected from the Los Angeles Turf Club without cause. (*Orloff, supra*, 30 Cal.2d at pp. 110–111.) The plaintiff filed suit under civil rights statutes, including former section 53, which at that time made it unlawful for a place of public amusement to deny admission to an individual on account of race, and former section 54, which provided a remedy of $100 plus compensatory damages for a violation of former section 53. (*Orloff, supra*, 30 Cal.2d at pp. 111–112; see now § 51 et seq.) The plaintiff sought injunctive relief in addition to section 54 damages. (*Orloff, supra*, 30 Cal.2d at pp. 110–111.) The defendant invoked a rule of statutory construction, arguing that because section 53 was then a new statutory right unknown at common law, it should be strictly construed such that the remedy under former section 54 be deemed exclusive. (*Orloff, supra*, 30 Cal.2d at p. 112.)

■ We determined that this rule of construction should not be applied mechanically, and that the applicable statutory provisions should be " 'liberally construed with a view to *effect its objects and to promote justice*.' " (*Orloff, supra*, 30 Cal.2d at p. 113, quoting § 4.) We reasoned that an important factor in determining whether a statute should be strictly construed "is the adequacy of the remedy provided by the statute." (*Orloff, supra*, 30 Cal.2d at p. 113.) Because the relief provided by the statute was "plainly inadequate . . . in a case of this character" (*id.* at p. 114), we held that the plaintiff was entitled to additional injunctive relief (*id.* at pp. 116–117).

Without deciding whether the right embodied in section 1719 is one that existed at common law, the instant case is distinguishable from *Orloff* in at least two critical respects. First, in *Orloff*, the defendant's assertion that the Legislature intended former section 54 to be exclusive rested only on "an assumption . . . that other remedies are excluded, or the drawing of an inference to that effect by reason of some rule of statutory construction." (*Orloff, supra*, 30 Cal.2d at p. 113.) In contrast, here, the legislative history

and statutory construction of 1719 support the inference that the Legislature intended that the statutory damages prescribed in section 1719 be exclusive. Second, whereas the former section 54 remedy in *Orloff* was "plainly inadequate" in light of the underlying conduct, CRS has not shown that the remedies prescribed in section 1719 are likewise inadequate.

### 3. *Inconsistent Remedies*

Finally, CRS argues that if prejudgment interest cannot be awarded under section 1719, then attorney fees under section 1717.5 cannot be awarded either. In *Stassinos II, supra,* 419 F.Supp.2d 1151, the court stated in dicta that its decision in *Stassinos I* was not intended to address or preclude recovery of "attorney's fees, post-judgment interest and contractual damages." (*Stassinos II*, at p. 1153.) CRS asserts that if section 1719 remedies are truly exclusive, then a party that avails itself of section 1719 should not be able to recover attorney fees. It further argues that because the Legislature could not have intended to withhold attorney fees from the prevailing party in a section 1719 dispute, section 1719 remedies cannot be exclusive.

However, the only issue here is the availability of prejudgment interest. In any event, section 1717.5 is inapplicable. It provides for such fees only in contract actions based on a "book account." (§ 1717.5, subd. (a).) A "*book account* is a detailed statement of debit/credit transactions kept by a creditor in the regular course of business, and in a reasonably permanent manner." (*Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579, fn. 5 [53 Cal.Rptr.3d 887, 150 P.3d 764], citing Code Civ. Proc., § 337a.) A check—a document created by the payor/debtor—is not a record entered in the creditor's regular course of business. (See *Robin v. Smith* (1955) 132 Cal.App.2d 288, 290–291 [282 P.2d 135] [drawn checks did not establish existence of book account between payor and payee].) Thus, section 1717.5 does not provide for recovery of attorney fees by the payee of a dishonored check proceeding under section 1719.

Moreover, once a judgment is obtained, postjudgment interest is expressly authorized by statute, regardless of the underlying cause of action. (Code Civ. Proc., § 685.010.)[10] Hence, an award of postjudgment interest is in no way inconsistent with a section 1719 service charge that does not include prejudgment interest.

---

[10] Code of Civil Procedure section 685.010, subdivision (a), provides that "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."

## III. DISPOSITION

Accordingly, we hold that the statutory damages prescribed in section 1719 are exclusive; a payee who recovers a service charge pursuant to section 1719 may not also recover prejudgment interest under section 3287.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.