Filed 1/4/21  P. v. Tinsley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>DONALD EUGENE TINSLEY,<br><br>      Defendant and Appellant. | C089528<br><br>(Super. Ct. Nos. STKCRFE19940007582, SC058087A) |

In 1995, a jury found defendant Donald Eugene Tinsley guilty of first degree murder and other charges and enhancements not material to this appeal.  (Pen. Code, § 187; statutory section citations that follow are to the Penal Code.)  We affirmed the judgment in 1997.  (*People v. Adams et al.* (Aug. 27, 1997, C022618) [nonpub. opn.] (Slip Opinion).)

1

In his direct appeal, defendant did not challenge his murder conviction, but he did challenge a robbery conviction, and several sentencing decisions by the trial court. (Slip Opinion, *supra*, C022618 at pp. 15, 17, 18-19, 21.)

In a "facts" section, our Slip Opinion explained that defendant: participated in an hours-long assault of Wadsworth; threatened to kill Wadsworth during the assault; later ordered Wadsworth, at gunpoint, to get into the back of a van (which transported Wadsworth to a location where he was later killed). At the new location, and after Wadsworth's hands were taped behind his back with duct tape by a codefendant, defendant told Wadsworth he was going to kill him; and pulled Wadsworth out of the van by his hair while carrying a handgun. (Slip Opinion, *supra*, C022618 at pp. 5-7.)

In rejecting one of defendant's challenges to his conviction, we ruled that the jury found against defendant on the murder charge "on the . . . theory of premeditation." (Slip Opinion, *supra*, C022618 at p. 18, fn. 11.)

In May 2019, defendant filed a petition for resentencing under then newly enacted section 1170.95. The trial court found defendant ineligible for relief in a written order, entered without eliciting any response from the People or holding a hearing. Defendant timely appealed, and now contends the trial court erred by: (1) denying the petition without first appointing counsel; (2) relying solely on the Slip Opinion to deny relief without giving defendant an opportunity to brief the relevant legal issues; and (3) "erroneously relying" on the "materially inadequate" Slip Opinion "to reach unsupported or inadequately supported findings."

We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

*Senate Bill No. 1437 and Section 1170.95*

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017-2018 Reg. Sess.). Senate Bill No. 1437 was enacted to "amend the felony murder rule and the

natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, the legislation amended sections 188 and 189 and added section 1170.95 to the Penal Code.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The new section 1170.95 permits those convicted of felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts where: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The

3

petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

The petition filed under section 1170.95 must include the following: "(b)(1)(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel."

If the petition is missing any of the information required by section 1170.95, subdivision (b)(1) and that information "cannot be readily ascertained by the [trial] court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)

Once a complete petition is filed, section 1170.95, subdivision (c) sets out the trial court's responsibilities: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

*Defendant's Section 1170.95 Petition*

In April 2019, defendant filed a petition to vacate his murder conviction pursuant to section 1170.95. The petition included a form declaration that he completed. In his declaration, defendant stated (1) a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) at trial, he was convicted of

4

first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine, and (3) he could not be convicted of first or second degree murder under the changes to sections 188 and 189. Defendant also requested the trial court appoint counsel. He did not include any attachments or exhibits to his form petition and declaration.

The record does not contain a response to defendant's petition, and the parties agree in their briefing that the People did not respond.

*Trial Court Order*

In May 2019, the trial court summarily denied defendant's petition, after conducting a "review of the [p]etition and court file," including the Slip Opinion. The court concluded that defendant failed to make a prima facie showing that he fell within the provisions of section 1170.95, subdivision (a)(3), because "he could be convicted of first degree murder despite the changes to" murder liability enacted by Senate Bill No. 1437. This was so, the trial court explained, because the "statement of facts" in the Slip Opinion affirming defendant's criminal judgment on direct appeal indicated defendant "had the intent to kill and with that intent aided, abetted, and assisted the actual killer in the commission of murder."

The trial court recited some of the salient facts from the Slip Opinion, including defendant's participation in an hours-long assault of Wadsworth, and defendant's statement that he was going to kill Wadsworth when he pulled Wadsworth out of a van by his hair, shortly before Wadsworth was fatally shot.

The trial court further explained: "While it was not entirely clear who the shooter was," one codefendant's testimony "pointed to" someone other than defendant as the shooter. "It was not proven beyond a reasonable doubt that [defendant] was the actual killer. However, based on the statement of facts cited above, [defendant] had an *intent to kill and did aid, abet, and assist the actual killer in the commission of murder*. In

5

addition, [defendant] was a major participant in the underlying felony (kidnapping) and acted with reckless indifference to human life."  (Italics added.)

Defendant timely appealed the trial court's order denying his petition.

DISCUSSION

I

*Summary Denial of Section 1170.95 Petition Without the Appointment of Counsel*

Defendant first contends the trial court erred by summarily denying his section 1170.95 petition before appointing counsel.

Specifically, he argues he met the "requirements for [an] initial showing" under the statute, which entitled him to appointment of counsel, as the "face of [his] petition . . . contain[ed] the required items":  "the required declaration, case number, date of conviction, and a request for counsel."  He further argues he had a Sixth Amendment right to appointment of counsel at the "critical stage" of the trial court's determination whether he made a prima facie showing that he fell within the provisions of section 1170.95.  Last, he argues federal due process principles required appointment of counsel before denial of his petition.

The Attorney General disagrees with defendant's argument that he had statutory and constitutional rights to appointment of counsel, and contends that even if the trial court erred in failing to appoint counsel, the failure was harmless, because "there . . . would have been no basis for the trial court to issue an order to show cause."

We conclude defendant had neither a statutory nor a constitutional right to appointment of counsel before the trial court summarily denied his section 1170.95 petition.

6

## A. Standard of Review

"Because this contention involves a question of statutory construction, our review is de novo. [Citation.] Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, fn. 8, review granted Mar. 18, 2020, S260493 (*Verdugo*).)

## B. Analysis

Though defendant insists broadly that "[t]he plain language of section 1170.95 contemplates that petitioners trying to prove their actual entitlement to relief will have the assistance of counsel," multiple recently published cases, now under review by our high court, have concluded that section 1170.95, subdivision (c) requires the trial court to make two separate prima facie determinations: one *before* appointing counsel and receiving briefing, and one after those procedural steps have been taken. (*Verdugo, supra*, 44 Cal.App.5th at pp. 327-329, review granted; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598 (*Lewis*); see also *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899-900 [agreeing with "[o]ur colleagues in Divisions One, Five, Six, and Seven," of the Second Appellate District, that defendant was not entitled to appointment of counsel before the trial court denied a section 1170.95 petition "simply because [defendant] checked the right boxes on a preprinted form"], review granted Aug. 12, 2020, S263219 (*Tarkington*).)

A minority view exists that, under the statute, a petitioner is entitled to appointment of counsel before denial of a petition, once a "facially sufficient petition requesting counsel" has been filed. (*People v. Cooper* (2020) 54 Cal.App.5th 106, 112, review granted Nov. 10, 2020, S264684; *Tarkington, supra*, 49 Cal.App.5th at p. 927 (dis. opn. of Lavin, J.), review granted.)

We agree with the majority view.

"The first sentence of section 1170.95, subdivision (c), directs the court to review the petition and determine if the petitioner has made the requisite prima facie showing. The second sentence provides, if the petitioner has requested counsel, the court must appoint counsel to represent him or her. The third sentence requires the prosecutor to file and serve a response to the petition within 60 days of service of the petition and permits the petitioner to file a reply to the response. The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence*: first, a prima facie showing; thereafter, appointment of counsel for petitioner*; then, briefing by the parties. ([*Lewis], supra*, 43 Cal.App.5th at pp. 1139-1140 ['[w]hen the statutory framework is, overall, chronological, courts will construe the timing of particular acts in relation to other acts according to their location within the statute; that is, actions described in the statute occur in the order they appear in the text'] [review granted]; [Citations.])" (*Verdugo, supra*, 44 Cal.App.5th at p. 332, review granted, italics added.)

Accordingly, section 1170.95 does not mandate appointment of counsel before a trial court's summary denial of a petition.

Defendant's constitutional arguments are also unpersuasive. Under the Sixth Amendment right to counsel, a defendant has a right to counsel at all critical stages of the proceedings. (U.S. Const., 6th Amend.; *Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1004-1005.) Critical stages are those "events or proceedings in which the accused is brought in confrontation with the state, where potential substantial

prejudice to the accused's rights inheres in the confrontation, and where counsel's assistance can help to avoid that prejudice." (*Gardner,* at pp. 1004-1005.)

A trial court's determination whether a defendant has made the prima facie showing that he falls within the provisions of section 1170.95 is not a critical stage of the proceedings for purposes of the right to counsel, because when a trial court makes that determination, it draws all factual inferences in the defendant's favor. (*Verdugo, supra,* 44 Cal.App.5th at p. 329, review granted.) Thus, this is not a proceeding at which a defendant is "brought in confrontation with the state . . . and where counsel's assistance can help." The trial court is not called upon to exercise its discretion in any way; it is making the relevant determination as a matter of law. (See *Lewis, supra*, 43 Cal.App.5th at p. 1138 [permitting the trial court to consider its file and the record of conviction before appointing counsel in a section 1170.95 proceeding is "sound policy" " 'when even a cursory review of the court file would show *as a matter of law that the petitioner is not eligible for relief* "], review granted, italics added; cf. *People v. Drayton* (2020) 47 Cal.App.5th 965, 977 ["with respect to the prima facie showing under section 1170.95(c), habeas corpus procedures provide a suitable analogy"]; *In re Clark* (1993) 5 Cal.4th 750, 780 [if a habeas corpus petition "attacking the validity of a judgment s*tates a prima facie case* leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns"], italics added.)

Defendant's argument that statutory provisions "demonstrate that this stage of the proceeding"--the moment when defendant filed his petition that "contain[ed] the required items"--"is adversarial in nature," is unpersuasive. As we explained earlier, the statute contemplates appointment of counsel only *after* a prima facie showing a petitioner "falls within the provisions of this section." Thus, the statute does not demonstrate that the first prima facie determination is "adversarial"; quite the opposite.

Federal due process principles require the appointment of counsel in certain proceedings where the Sixth Amendment does not. For example, because due process

"prohibit[s] discrimination against convicted indigent inmates," "an indigent inmate has a constitutional right to counsel appointed at the state's expense where . . . the state confers a criminal appeal as of right." (*In re Barnett* (2003) 31 Cal.4th 466, 472, citing *Douglas v. California* (1963) 372 U.S. 353, 356-357 [9 L.Ed.2d 811].) An imprisoned defendant also "is entitled by due process to reasonable access to the courts, and to the assistance of counsel if counsel is necessary to ensure that access." (*In re Clark, supra*, 5 Cal.4th p. 779.)

Our Supreme Court has held that the appointment of counsel is demanded by due process concerns *if* a petition attacking the validity of a judgment *states a prima facie case leading to issuance of an order to show cause*. (*In re Clark, supra*, 5 Cal.4th at p. 780 [petition for writ of habeas corpus]; *People v. Shipman* (1965) 62 Cal.2d 226, 232-233 [petition for writ of error *coram nobis*].)

Here, because he had not stated a prima facie case that lead to issuance of an order to show cause, defendant had no federal due process right to counsel to ensure reasonable access to the courts vis-à-vis the section 1170.95 petition.

Last, defendant says he had a "procedural due process" right to appointment of counsel before the trial court's summary denial of his petition, because section 1170.95, subdivision (c) "creates a liberty interest in having counsel appointed and in having the opportunity to file additional briefing before the court decides whether to issue an order to show cause."

This argument is unpersuasive for the same reason defendant's Sixth Amendment argument is unpersuasive: the statute contemplates appointment of counsel only *after* a prima facie showing a petitioner "falls within the provisions of this section." Because the trial court correctly ruled that, as a matter of law, defendant does *not* fall within the provisions of section 1170.95, defendant had no "liberty interest in having counsel appointed." (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 626 [rejecting a procedural due

10

process claim, because the court could "say with confidence that '[n]o other result was possible' "].)

The flaw that runs through all of defendant's distinct arguments why counsel should have been appointed is the failure to recognize that summary denial of his petition was the *only* correct result. This is so because, as the trial court reasoned, our Slip Opinion established that defendant acted with intent to kill when he participated in Wadsworth's murder. (Slip Opinion*, supra*, C022618 at p. 18, fn. 11.)

Thus, the trial court correctly ruled that defendant is statutorily ineligible for section 1170.95 relief. (See §§ 189, subds. (e)(1) [actual killer], (e)(2) [defendant "was not the actual killer, but, with the intent to kill, aided, abetted . . . or assisted the actual killer in the commission of murder in the first degree"]; 1170.95, subd. (a)(3) [prima facie case for relief requires a showing the petitioner could not be convicted of first or second degree murder because of changes to sections 188 or 189 made by Senate Bill No. 1437].) Therefore, no argument by counsel properly could have resulted in a different outcome, and any conceivable error in failing to appoint counsel is harmless.

II

*The Trial Court's Reliance on the Slip Opinion*

Defendant's two remaining claims challenge the propriety of the trial court's reliance on the Slip Opinion to summarily deny defendant's petition.

First, noting that the trial court "did not give [him] any notice that it [would] rely[] on" the Slip Opinion, "nor did it give him the opportunity to respond to the allegations and legal analyses in that opinion," defendant contends "the trial court had no right to" rule him "ineligible for relief as a matter of law" "without soliciting briefing from the prosecution and [defendant]."

Second, defendant contends the trial court violated due process principles by "erroneously relying" on the "materially inadequate" Slip Opinion "to reach unsupported

or inadequately supported findings," because "[n]o issue" in his direct appeal "required [us] to determine or even address whether [defendant] harbored an intent to kill."

We note that defendant does not challenge the trial court's legal conclusion that defendant aided and abetted Wadsworth's killing. Accordingly, we do not address the issue.

The Attorney General disagrees, arguing (a) the Slip Opinion is part of the record of conviction, and therefore properly was considered by the trial court at the first prima facie step, and (b) "whether or not the issue" of defendant's intent to kill "was specifically raised in the original appeal, the trial court . . . could still read and consider the statement of facts in [the Slip Opinion] to determine the veracity of a material fact alleged in" defendant's petition.

We conclude the trial court did not err by relying on the Slip Opinion to summarily deny defendant's petition, as we determined in the Slip Opinion that defendant harbored an intent to kill when he participated in Wadsworth's murder.

A. The Trial Court's Substantive Gatekeeping Function

Subdivision (b)(2) of section 1170.95 "directs the court in considering the facial sufficiency of the petition to access readily ascertainable information. The same material that may be evaluated under subdivision (b)(2)--that is, documents in the court file or otherwise part of the record of conviction that are readily ascertainable--should similarly be available to the court in connection with the first prima facie determination required by subdivision (c). . . . The record of conviction might also include other information that establishes the petitioner is ineligible for relief as a matter of law because he or she was convicted on a ground that remains valid notwithstanding Senate Bill No. 1437's amendments to sections 188 and 189 (see § 1170.95, subd. (a)(3))." (*Verdugo, supra*, 44 Cal.App.5th at pp. 329-330, review granted.)

"A court of appeal opinion, whether or not published, is part of the appellant's record of conviction.  [Citations.]  Accordingly, it [is] proper for [a] superior court to consider" an opinion affirming a murder conviction "in determining whether [a petitioner] ha[s] made a prima facie showing of eligibility for relief under section 1170.95 or whether he was ineligible for relief as a matter of law."  (*Verdugo, supra*, 44 Cal.App.5th at p. 333, review granted.)

"Unlike [an earlier] version of [Senate Bill No. 1437], . . . this final iteration, which authorizes the court both to dismiss the petition if it lacks any required information and to determine if there is a prima facie showing the petitioner falls within the provisions of the statute before ordering briefing, indicates the Legislature's intent that the superior court perform a *substantive* gatekeeping function, screening out clearly ineligible petitioners before devoting additional resources to the resentencing process."  (*Verdugo, supra*, 44 Cal.App.5th at p. 331, review granted, italics added.)

Here, the trial court properly considered the Slip Opinion (as part of defendant's record of conviction) in performing its substantive gatekeeping function at the first prima facie stage.  Defendant's argument the trial court erred is based on an unpersuasive interpretation of section 1170.95:  that the trial court's substantive gatekeeping function commences only after the trial court is in "receipt of the prosecutor's response and the petitioner's reply."

### B.  Adequacy of the Record

The parties agree that *People v. Woodell* (1998) 17 Cal.4th 448 controls on the question whether the trial court could have relied on the Slip Opinion in determining whether, as a matter of law, defendant had the intent to kill when he participated in Wadsworth's murder.  In that opinion, our Supreme Court said that while "an appellate opinion might not supply all answers," "[i]f the appellate court did state the pertinent facts, a trier of fact is entitled to find that those statements accurately reflect the trial

13

record." (*Woodell* at p. 457.) "[A]ppellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue. Whether and to what extent an opinion is probative in a specific case must be decided on the facts of that case." (*Ibid.*)

Here, in reaching its conclusion that defendant could not state a prima facie case that he fell within the provisions of section 1170.95 (because he had intent to kill and aided and abetted Wadsworth's actual killer) the trial court correctly characterized portions of the Slip Opinion's statement of facts describing how defendant: participated in an assault on Wadsworth; threatened to kill Wadsworth multiple times; pointed a gun at Wadsworth to force him into a van; and pulled Wadsworth out of the van by his hair while carrying a handgun. (See Slip Opinion, *supra*, C022618 at pp. 5-7.)

Defendant contends the trial court's legal conclusion that those facts demonstrate defendant had an intent to kill (making defendant ineligible for section 1170.95 relief) violated his due process rights, because we were never called upon to answer the question of defendant's intent to kill in the Slip Opinion, as defendant "raised only one issue pertaining to his guilt" vis-á-vis a robbery conviction, and "[t]he remainder of the issues" he raised "were sentencing issues." An "appellate opinion should not be used to support a theory that was never advanced before that court, nor should the summary of facts contained in that opinion be used to establish facts that were simply not at issue in the relevant appeal," defendant maintains.

Even assuming solely for the sake of argument that defendant is correct on the law, his argument fails because it rests on a misunderstanding of the import of one of our rulings in the Slip Opinion. Specifically, we rejected defendant's argument that section 654 precluded imposition of multiple punishments for his multiple criminal acts. (Slip Opinion, *supra*, C022618 at pp. 17-18.) In making that ruling, we observed that the jury at defendant's trial "did not expressly find felony murder; rather, it hung on the felony-murder special circumstance. Thus we infer that *it found against defendant[] on count I*

14

*[murder] on the alternative theory of premeditation*." (Slip Opinion*, supra*, C022618 at p. 18, fn. 11, italics added.)

Accordingly, we *were* called upon to decide whether defendant harbored intent to kill; and we decided the jury found that defendant acted with premeditation when he participated in Wadsworth's murder.

Thus, "on the facts of th[is] case," (*People v. Woodell, supra*, 17 Cal.4th at p. 457) the Slip Opinion is not merely probative on the issue of defendant's intent to kill, it is determinative; and the trial court properly relied on it in ruling that defendant had the intent to kill, rendering him ineligible for section 1170.95 relief as a matter of law.

DISPOSITION

The order denying defendant's petition is affirmed.

_____
HULL, J.

We concur:

_____
RAYE, P. J.

_____
MAURO, J.

15