Filed 9/30/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| THE PEOPLE ex rel. ALAMEDA COUNTY TAXPAYERS' ASSOCIATION, INC., et al., <br><br>     Plaintiffs and Appellants, <br><br>         v. <br><br> DAVID KYLE BROWN, <br><br>     Defendant and Respondent. | A168562 <br><br> (Alameda County <br> Super. Ct. No. 22CV015533) |


The Alameda County Board of Supervisors (the Board) appointed defendant David Kyle Brown to fill a vacancy on the Board created by the sudden death in 2021 of Supervisor Wilma Chan.  Brown served on the Board from November 16, 2021 until January 2, 2023, when a newly elected supervisor replaced him.  Plaintiffs Alameda County Taxpayers' Association, Inc., Marcus Crawley, David Denton, and Steve Slauson (collectively, plaintiffs) filed a quo warranto proceeding (see Code Civ. Proc., § 803) in the trial court in August 2022, seeking a court order removing Brown from office on the ground he was not eligible to serve as supervisor.

The basis for plaintiffs' lawsuit as outlined in their briefing in this appeal is a claim that Brown did not satisfy two types of residency requirements to serve on the Board—what the parties refer to as "prior

1

residency" and "continuous residency" requirements. First, as to prior residency, plaintiffs contend that, because Brown was a resident of Contra Costa County prior to his appointment, he failed to satisfy (a) a one-year prior residency requirement under Alameda County Administrative Code section 2.04.020, and (b) a 30-day prior residency requirement under state law, specifically Government Code section 25041. Brown argues in response that the cited code provisions do not apply here, in part because they apply to *elected* supervisors but not to a person *appointed* to fill a vacancy on the Board.

Second, as to continuous residency (i.e., the rule that a supervisor must reside in his or her district *while in office*), the parties agree the Alameda County Charter and the Alameda County Administrative Code impose such a requirement. (Alameda County Charter, § 4; Alameda County Admin. Code, § 2.04.020.) Plaintiffs argue Brown failed to satisfy this requirement because, although he lived in Oakland (in his supervisorial district in Alameda County) during his term in office, he "never became a true 'resident' or domiciliary" of the district. Instead, plaintiffs assert, the evidence shows Brown "lived in Oakland for temporary purposes merely."

After a December 2022 hearing on the merits of the prior residency issue, the trial court ruled in mid-January 2023 (shortly after Brown left office) that the county and state code provisions invoked by plaintiffs—Alameda County Administrative Code section 2.04.020 and Government Code section 25041—do not impose "a pre-residency requirement" for a supervisor who is appointed to fill a vacancy on the Board. In April 2023, the court issued a ruling finding the remaining issue in the case—the question whether Brown satisfied the continuous residency

2

requirement—was moot, because Brown had left office. The court found that (unlike the legal question as to the applicability of a prior residency requirement) the continuous residency issue was a factual one, dependent on the presentation of evidence, that would have little application to future disputes. Following these rulings, the court entered judgment in favor of Brown, and this appeal followed.

Prior to briefing on the merits of this appeal, Brown moved to dismiss the appeal as moot. As we discuss further below, this court denied the motion to dismiss without prejudice to Brown's ability to argue mootness in his appellate brief.

In their appellate briefing, plaintiffs principally contend (1) although Brown has left office, the appeal should not be dismissed as moot, because exceptions to the usual rule of dismissal for mootness apply here, (2) the trial court erred in determining the code provisions invoked by plaintiffs do not impose a prior residency requirement applicable to vacancy appointments to the Board, and (3) the trial court erred by finding the continuous residency issue was moot, and the matter should be remanded for further proceedings should plaintiffs wish to proceed with that issue. Plaintiffs also argue (4) the trial court erred by denying plaintiffs' motion for judgment on the pleadings, and (5) the court erred in various respects in its management of the quo warranto proceeding.

We will address the merits of the appeal, because although Brown's departure from office technically moots the questions raised as to the residency requirements for county supervisors, we conclude those questions are of significant public interest. On the merits, we agree with the trial court that the prior residency requirements cited by plaintiffs do not apply to Brown's vacancy appointment by the Board. As to the

3

continuous residency requirement (which does apply), we conclude there are disputed factual issues that must be resolved by the trial court on remand in the event plaintiffs choose to press that question to a final adjudication at this stage. We reject the remainder of plaintiffs' arguments challenging other rulings by the trial court. We therefore affirm in part, reverse in part, and remand for further proceedings on the continuous residency question.

## I. BACKGROUND[1]

### A. *Brown's Appointment as Supervisor*

On November 3, 2021, Alameda County Supervisor Wilma Chan, who represented the county's District 3, was killed in a car accident. On November 16, 2021, the Board appointed Chan's former chief of staff, Brown, to fill the resulting vacancy on the Board.

At the time of Chan's death, Brown lived in a house in Walnut Creek, in Contra Costa County, with his wife and two minor children. As later summarized in an opinion by the Office of the Attorney General in connection with the quo warranto proceedings in this matter, Brown began (after Chan's death) to take steps to establish residency in Oakland, in Alameda County's District 3. (105 Ops.Cal.Atty.Gen. 111, 111 (2022).) "According to his sworn statements, Brown moved into a friend's apartment in Oakland on November 12, 2021. Approximately one month later, Brown moved into his own apartment in the same apartment

---

[1] We deny on relevance grounds plaintiffs' request that we take judicial notice of a November 2022 newspaper editorial expressing an opinion about the present litigation. We also deny on relevance grounds plaintiffs' more recent request (filed a few days before oral argument) that we take judicial notice of (1) a newsletter issued by an Alameda County supervisor and (2) a provision of the Government Code that plaintiffs did not cite in their briefs.

complex.  Brown also changed his voter registration and various mailing records to those Oakland addresses.  Meanwhile, Brown's wife and children continued to reside in their Walnut Creek home." (*Ibid.*)

The Board's November 16, 2021 appointment of Brown was to represent District 3 until the end of Chan's term on January 2, 2023. (105 Ops.Cal.Atty.Gen., *supra*, at p. 111.)  Brown was not a candidate for the District 3 seat in the 2022 election cycle.  (*Id.* at p. 112.)  In the November 2022 election, candidate Lena Tam won a majority of the vote for the District 3 seat.  On January 2, 2023, Tam took office as the District 3 supervisor, and Brown no longer holds the seat or claims any right to hold it.

## B. *Procedural Background*

### 1. Plaintiffs' Related Action

On February 1, 2022, two parties who later became plaintiffs in the present quo warranto proceeding—Alameda County Taxpayers' Association, Inc., and Marcus Crawley—filed a lawsuit challenging Brown's November 2021 appointment to the Board.  That lawsuit (Alameda County Superior Court Case No. 22CV006370) alleged violations of California's open meeting laws.

### 2. The Present Quo Warranto Matter

#### a. *Pleadings and Other Preliminary Matters*

On March 10, 2022, the four parties who later became plaintiffs in this action (Alameda County Taxpayers' Association, Inc., Marcus Crawley, David Denton, and Steve Slauson) filed an application with the California Attorney General seeking leave to bring a quo warranto proceeding to remove Brown from office under Code of Civil Procedure section 803.  The Attorney General's office granted leave to sue in an

5

opinion issued on June 17, 2022.  (105 Ops.Cal.Atty.Gen., *supra*, at p. 111.)[2]

On August 3, 2022, plaintiffs filed a quo warranto complaint, initiating the present case.  They filed the operative first amended complaint (FAC) on September 19, 2022.  The FAC seeks a judgment ousting Brown from office under Code of Civil Procedure section 803.[3]

Brown filed a demurrer challenging the FAC on September 26, 2022.  The court granted an ex parte application by plaintiffs to set an expedited hearing on the demurrer, which was held on October 11, 2022.  The court took the matter under submission and issued an order overruling the demurrer on October 28, 2022.  The court also set a

---

[2] Chief Deputy Attorney General Venus D. Johnson issued the opinion because Attorney General Rob Bonta had recused himself from the matter.  (105 Ops.Cal.Atty.Gen., *supra*, at p. 111, fn. 1.)

[3] "While quo warranto proceedings originated as a common law writ, they have been codified in California and are not equitable proceedings."  (*People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 618.)  Code of Civil Procedure section 803, which is "the substantive statute authorizing the quo warranto proceeding" (*People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto,* at p. 619), "authorizes the Attorney General or a relator acting with the Attorney General's consent to seek the ouster of a person unlawfully holding office."  (*People ex rel. Schlesinger v. Sachs* (2023) 97 Cal.App.5th 800, 814.)  Code of Civil Procedure section 803 states:  "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state.  And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."

6

hearing for December 6, 2022, to address the merits of the parties' dispute as to whether a prior residency requirement applies (under either Alameda County Admin. Code, § 2.04.020 or Gov. Code, § 25041) for a supervisor appointed to fill a vacancy on the Board.

On November 7, 2022, Brown filed an answer to the FAC. After the parties filed briefs addressing the prior residency question, the court heard argument on December 6, 2022, and took the matter under submission. On December 29, 2022, while the prior residency issue was still under submission, plaintiffs filed a motion for judgment on the pleadings. Plaintiffs contended they were entitled to judgment because Brown had the burden of proof as the defendant in a quo warranto action and his answer to the FAC failed to state facts sufficient to establish his entitlement to office.

On January 3, 2023, Brown filed a motion to dismiss the quo warranto proceeding as moot in light of the expiration of his term as supervisor on January 2, 2023.

b. *The Trial Court's Ruling on the Prior Residency Issue and on Plaintiffs' Motion for Judgment on the Pleadings*

On January 17, 2023, the trial court entered a written "Order Denying Challenge Under Section 803 of the Code of Civil Procedure and Denying Motion for Judgment on the Pleadings." In its order, the court addressed the merits of the prior residency issue that it had taken under submission at the December 6 hearing. The court found in favor of Brown, concluding he had "proven, by at least a preponderance of the evidence, that he has not usurped, intruded into, or unlawfully held or exercised the office of Alameda County Supervisor, as required by section 803 of the Code of Civil Procedure," because neither Alameda County Administrative Code section 2.04.020 nor Government Code

7

section 25041 imposes a prior residency requirement for a person appointed to a vacancy on the Board.[4]

The court concluded that its ruling on this issue mooted plaintiffs' pending motion for judgment on the pleadings, which as noted, was based on an argument that Brown's answer to the FAC was insufficient to state a defense. Having ruled in favor of Brown on the merits (at an expedited merits hearing that plaintiffs had requested), the court denied plaintiffs' motion for judgment on the pleadings.

On March 7, 2023, the court heard and denied plaintiffs' motion for reconsideration of its January 17, 2023 ruling. Also at the March 7, 2023 hearing, the court set a hearing for April 4, 2023, and ordered plaintiffs to show cause at that hearing why the remainder of the case, relating to the continuous residency requirement, should not be dismissed as moot since Brown no longer served on the Board.

---

[4] In addressing the legal question as to the applicability of a prior residency requirement, the court stated it would take as true plaintiffs' factual allegation that Brown resided in Walnut Creek, in Contra Costa County, *prior to* his appointment to the Board.

The court noted plaintiffs had also raised a question of Brown's residence *during* his term in office. As summarized by the court, plaintiffs contended that Brown's move to Alameda County "[did] not alter his ineligibility," in part because Brown "still did not legally reside in Alameda County even after moving into an apartment here because he never intended to live here permanently, or even indefinitely." But the court found this issue was not before it, stating: "In order to avoid an evidentiary hearing, which could have caused further delay, [plaintiffs] did not press their argument that Mr. Brown did not reside in Alameda County during his short incumbency."

8

c. *The Trial Court's Ruling as to Mootness of the Continuous Residency Issue, Entry of Judgment, and Plaintiffs' Appeal*

Following the April 4, 2023 hearing, the court entered an order finding the continuous residency issue was moot. The court later entered judgment in favor of Brown. Plaintiffs appealed.

On November 20, 2023, Brown filed a motion to dismiss this appeal as moot, arguing that because Brown no longer holds the Board seat, a reversal of the judgment would not grant plaintiffs any effective relief. Plaintiffs opposed the motion, arguing this case raises important legal issues that should be resolved. On January 2, 2024, this court issued an order stating the motion to dismiss "is denied without prejudice to reassertion in Respondent's brief that any challenge to whether Brown met the residency requirements during the term of his appointment is moot."

## II. DISCUSSION

### A. *Mootness*

The parties dispute whether the issues raised in this appeal are moot in light of Brown's departure from office. We conclude it is appropriate to resolve the appeal on the merits.

#### 1. Additional Background

##### a. *The Trial Court's Rulings as to Mootness*

The trial court reached different conclusions as to mootness when considering the prior residency and continuous residency issues. First, as to prior residency, the court held a hearing on the merits of that question and took it under submission on December 6, 2022, while Brown was still serving on the Board. The court entered its written order addressing the prior residency issue on January 17, 2023, a few weeks after the January 2, 2023 expiration of Brown's term.

9

In the January 17, 2023 order, before addressing the merits of the prior residency question in detail, the court (Hon. Michael Markman) found that, although Brown had left office, "[plaintiffs'] case remains timely and subject to adjudication by the Court." The court found the case should not be dismissed, because it presented "an ongoing 'public question of government legitimacy.'" The court elaborated: "[Plaintiffs] point out that interpretation of section 2.04.020 of the Alameda County Administrative Code remains in dispute. The Court also notes that the public has a significant interest in determining whether an acting supervisor was permissibly exercising power or was instead an 'usurper' under California law. While the parties have not briefed the matter, it is at least theoretically possible that matters upon which a supervisor may have voted might be voidable if the supervisor was unlawfully holding office." As noted, the court then reached the merits of the prior residency issue and ruled in favor of Brown, finding no prior residency requirement applied.

As to continuous residency, the court (Hon. Harold Kahn, who heard the matter due to Judge Markman's unavailability) issued a ruling in April 2023 finding that the question whether Brown satisfied the continuous residency requirement was moot because Brown had left office. Judge Kahn found that, in contrast to the statutory interpretation question as to the applicability of a prior residency requirement (a "pure issue of law") that Judge Markman had addressed in the January 17, 2023 order, the question whether Brown satisfied the continuous residency requirement "is a factual issue dependent on presentation of evidence whose resolution has little or no application to future disputes about whether a supervisor has met that requirement, even assuming

10

that there will be such future disputes." Judge Kahn found that resolution of the continuous residency question would turn on "the unique facts of Brown's acts and intentions," and the issue was "neither of general public interest nor likely to have any significance in establishing any legal principles."

Finally, Judge Kahn rejected plaintiffs' argument that the case should proceed so they could (1) challenge the validity of Brown's actions while in office or (2) seek to obtain a fine under Code of Civil Procedure section 809. Judge Kahn noted the FAC does not seek any relief pertaining to the validity of Brown's actions as supervisor and does not request imposition of a fine against Brown.

Having resolved the prior residency issue on the merits in favor of Brown, and having determined the continuous residency issue was moot, the court entered judgment in favor of Brown.

b. *Brown's Motion to Dismiss This Appeal as Moot*

After plaintiffs appealed the judgment, Brown filed a motion in November 2023 to dismiss this appeal as moot. Noting that plaintiffs' quo warranto action sought to remove him from office, Brown argued that, because he is no longer in office, a reversal of the judgment would not grant plaintiffs any effective relief.

Brown also contended that the prior residency and continuous residency questions were not "issues of broad public concern that are likely to arise again." As to prior residency, Brown argued the question whether Alameda County Administrative Code section 2.04.020 applies to vacancy appointments "is not sufficiently likely to recur to warrant hearing a moot appeal." And the continuous residency question— "whether Brown actually resided in the District during his term"—"is a

11

fact-specific issue that cannot recur." Plaintiffs opposed the motion to dismiss.

On January 2, 2024, this court issued an order stating the motion to dismiss "is denied without prejudice to reassertion in Respondent's brief that any challenge to whether Brown met the residency requirements during the term of his appointment is moot."[5]

## 2. The Appeal Should Be Resolved on the Merits

### a. *Mootness and Exceptions to Dismissal*

In general, it is a court's duty to decide " ' "actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) "Moot cases . . . are '[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.' " (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.) "The pivotal question in determining if a case is moot is . . . whether the court can grant the plaintiff any effectual relief." (*Id.* at p. 1574.)

---

[5] In his subsequently filed appellate brief, Brown states that (as he outlined in his motion to dismiss) he believes the entire appeal is moot. But Brown interprets the above language in this court's order denying the motion as (1) allowing him to reassert only the argument that the continuous residency issue is moot, and (2) reflecting an implicit finding by this court that the prior residency issue falls within an exception to mootness and will be resolved on the merits. He therefore presents only an argument that the continuous residency issue is moot. We will, however, consider the mootness question as to both issues.

12

"[M]oot appeals generally should be dismissed. ([Citation]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 5:22 [the general rule is that moot appeals are dismissed].) But there are three discretionary exceptions that allow an appellate court to decide an otherwise moot appeal: '(1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation].' " (*Ghost Golf, Inc. v. Newsom* (2024) 102 Cal.App.5th 88, 100.)

b. *Analysis*

Here, because Brown no longer holds a seat on the Board, neither the trial court nor this court can grant the relief sought by plaintiffs in the FAC—the ouster of Brown from that seat. Plaintiffs assert certain *other* relief could be granted if we were to reverse the trial court's judgment, specifically "the possible imposition of a fine under Code of Civil Procedure section 809[6] and/or invalidation of actions taken [by Brown] while he usurped public office." Brown argues in response that, under case law applying the "de facto officer doctrine," his actions in office cannot now be challenged. As to fines, Brown notes plaintiffs did not request that relief in the FAC, and he contends that in any event the possible availability of a discretionary fine should not be sufficient to defeat mootness.

We need not resolve the parties' arguments on these points. Even assuming that no effective relief can be granted and that the case

---

6 Code of Civil Procedure section 809 provides that a defendant who is found to have usurped public office shall "pay the costs of the action" and may also be required to pay a "fine not exceeding five thousand dollars" to the state treasury.

13

therefore is moot, we conclude the first exception to dismissal applies here. This case presents an issue of broad public interest. Quo warranto proceedings involve " ' "disputes over title to public office" ' " that " ' "are viewed as a public question of governmental legitimacy and not merely a private quarrel among rival claimants . . . ." ' " (*People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 815–816.) We agree with the trial court that "the public has a significant interest" in knowing whether Brown was properly appointed to office. In particular, in our view, the interpretation of the prior residency requirements and the determination whether they apply to vacancy appointments are important public issues that should be resolved in this appeal.

In Brown's motion to dismiss this appeal, he argued that the question whether the one-year prior residency requirement in Alameda County Administrative Code section 2.04.020 applies to vacancy appointments is "not sufficiently likely to recur" to warrant hearing this appeal, because the issue does not appear to have arisen before. But the question as to the eligibility requirements for an appointed supervisor will be presented to the Board each time there is a vacancy. That the issue has not previously developed to the point of producing a published opinion does not persuade us the question is unlikely to recur.

As to the continuous residency requirement imposed by both Alameda County Charter section 4 and Alameda County Administrative Code section 2.04.020, we conclude that the question as to the showing needed to satisfy that requirement is an issue of public importance. We agree with the trial court that this aspect of plaintiffs' case is more factual in nature than the prior residency issue—the parties agree a supervisor must reside in his district during his incumbency, and they primarily

14

dispute whether Brown satisfied that requirement—but it too implicates broader issues of public legitimacy and usurpation.  Thus, the question whether and how a person who has recently moved to a district can satisfy the continuous residency requirement is, in our view, a matter of public interest that should be resolved on the merits along with the prior residency question.

## B. *Prior Residency Requirements*

Plaintiffs contend Brown was ineligible to be appointed to fill the Board vacancy on November 16, 2021, because having moved to District 3 only a few days earlier, he did not satisfy (1) a one-year prior residency requirement in Alameda County Administrative Code section 2.04.020,[7] or (2) a 30-day prior residency requirement in Government Code section 25041.  We conclude neither provision prohibited Brown's appointment.

### 1. The One-Year Prior Residency Requirement in Alameda County Administrative Code section 2.04.020

The prior residency requirement that plaintiffs principally rely on is set forth in Alameda County Administrative Code section 2.04.020, which states:  "The board consists of five members, one member elected from each of five supervisorial districts designated as provided by the [Alameda County] Charter at the time and in the manner and for the terms provided by state law.  Each member must be an elector of the district which he represents, must reside therein during his incumbency, and

_____

[7] Alameda County is a charter county.  The Alameda County Charter does not itself impose a prior residency requirement for supervisors (although it does require that a supervisor reside in his district while in office) (Alameda County Charter, § 4); the one-year prior residency requirement is stated in the county's administrative code (Alameda County Admin. Code, § 2.04.020).

15

must have been such an elector *for a[t] least one year immediately preceding his election*.  No supervisor shall, during the term for which he has been elected, or for one year thereafter, be eligible for appointment to any office or position carrying compensation and created by the Charter or by ordinance." (Alameda County Admin. Code, § 2.04.020, italics added; see *id.*, § 1.04.030.)

The parties dispute whether this provision requires that a supervisor who is appointed by the Board to fill a vacancy, rather than being elected by voters, must have lived in the district for one year prior to his appointment.[8]  Plaintiffs contend in part that it is "well-settled law" that "legal qualifications for 'election' to a local public office should be broadly construed to include 'appointment' to that same office."  Brown responds that the requirement for a supervisor to reside in the district for one year "preceding his election" (Alameda County Admin. Code, § 2.04.020) does not apply in the unusual case of a vacancy appointment to the Board.  In that circumstance, he argues, section 8 of the Alameda County Charter authorizes the Board to appoint a supervisor to fill the vacancy until the next election, and it does not limit the people the Board may consider based on where they lived during the year prior to their appointment.

---

[8] We also requested, and the parties filed, supplemental briefs addressing whether the one-year prior residency requirement in Alameda County Administrative Code section 2.04.020 is unconstitutional.  (See *Johnson v. Hamilton* (1975) 15 Cal.3d 461, 464, 472 (*Johnson*) [holding that one-year and six-month prior residency requirements for local officials were unconstitutional].)  We have concluded that we need not resolve the constitutionality question in this appeal, because we find as a matter of statutory interpretation that the prior residency requirement in Alameda County Administrative Code section 2.04.020 does not apply to a supervisor appointed to fill a vacancy on the Board.

We review de novo questions of statutory interpretation (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387), including interpretation of local ordinances, codes, and charters (*Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 235). "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Imperial Merchant Services, Inc. v. Hunt, supra,* 47 Cal.4th at pp. 387–388.)

Applying these standards here, we agree with the trial court that the one-year prior residency requirement in Alameda County Administrative Code section 2.04.020 does not apply to a vacancy appointment. Beginning with the statutory language, Alameda County Administrative Code section 2.04.020 requires that a supervisor reside in the district "for a[t] least one year immediately preceding his election"; it does not expressly address vacancy appointments to the Board. (*Brown v. City of Inglewood* (2025) 18 Cal.5th 33, 49, fn. 10 [" 'There is a clear and well-understood distinction between appointment and election.' "]; *Mono County v. Industrial Acc. Com.* (1917) 175 Cal. 752, 754.) And we disagree with plaintiffs that, in the present context, the term "election" should be read to include a vacancy appointment.

We note initially that section 8 of the Alameda County Charter, which sets forth the vacancy appointment procedure, treats that

17

procedure as something different from, and an exception to, the more common situation where a supervisor is elected by voters. Section 8 of the Alameda County Charter provides that, if a vacancy occurs on the Board, the Board will "fill the vacancy"; if the Board fails to do so within 60 days, the Governor will fill the vacancy. (Alameda County Charter, § 8.)[9] The person selected to fill the vacancy—the "appointee"—is to hold office only "until the election and qualification of his/her successor," which will occur "at the next general election." (*Ibid.*)[10] Section 8 of the charter does not use the term "election" to refer to a vacancy appointment.

As plaintiffs note, courts have held that, in some circumstances, a statutory reference to an "election" to office should be read to encompass an appointment to that office, but in our view these cases are distinguishable and do not sweep as broadly as plaintiffs suggest. In *Barrett v. Hite* (1964) 61 Cal.2d 103, 105–106 (*Barrett*), the California Supreme Court stated the meaning of the term " 'elect' " depends on the context—" 'elect' " "ordinarily" "refers to a determination made by voters," but it may in some circumstances have "a broader meaning" encompassing other types of selection, such as appointment. In *Barrett*, the court construed an amendment to the California Constitution

[9] Under general state law, the Governor fills a vacancy that occurs on a county's board of supervisors. (Gov. Code, § 25060.)

[10] Section 8 of the Alameda County Charter states in full: "Whenever a vacancy occurs on the Board of Supervisors, the Board of Supervisors shall fill the vacancy, provided that, if it shall fail to fill the vacancy within 60 days following its occurrence, the Governor shall fill the vacancy. The appointee shall hold office until the election and qualification of his/her successor. In such case there shall be elected at the next general election a supervisor to fill such vacancy for the unexpired term, unless such term expires on the first Monday after the first day of January succeeding said election."

providing that incumbent superior court judges facing no opposition in an election would not appear on the ballot and would be declared " 're-elected.' " (*Barrett*, at pp. 104–105.)  A group of judges who were initially appointed argued they were not subject to this provision because having never been elected, they could not be " 're-elected.' " (*Id.* at pp. 104, 105.)

The Supreme Court rejected this argument, stating in part: "Although it is true, as plaintiffs point out, that ordinarily 'elect' refers to a determination made by voters, the word also has a broader meaning, namely, 'to make a selection of:  Choose . . . to choose (a person) for an office . . .' " (*Barrett, supra,* 61 Cal.2d at p. 105.)  This broader meaning can include an appointment to office.  (*Id.* at pp. 105–106)  Considering which of the two meanings should be applied in the case before it, the *Barrett* court held that "[t]he more reasonable interpretation of the amendment is that the word 're-elected' is used in its broader sense, i.e., that the county clerk or registrar is to declare that the incumbent is again chosen or selected to hold the office of judge." (*Id.* at p. 106.)

Our reading of *Barrett* is that the "more reasonable interpretation" of the term " 'elect' " in a statutory provision may be broader or narrower, depending on the context and the statutory purpose.  (*Barrett, supra,* 61 Cal.2d at p. 106.)  Plaintiffs are incorrect in suggesting that *Barrett* established a rule that the broader meaning always applies, or that it always applies "in the context of qualifications for public office."

The other cases cited by plaintiffs on this point similarly concluded only that, in a particular statutory context, the term "elect" may encompass selection methods other than election by voters, such as appointment.  (*Reed v. Hammond* (1912) 18 Cal.App. 442, 444–445 [noting "appointment" and "election" generally have different meanings,

but concluding that a statute requiring a county officeholder to be an elector " 'at the time of his election' " was intended to prescribe qualifications for all county officers, whether elected or appointed]; *Odell v. Rihn* (1912) 19 Cal.App. 713, 719 [stating "[t]he words 'elected' and 'appointed' ordinarily are not synonymous," but finding the term " 'elected' " in a statute pertaining to justices of the peace was intended to encompass selection of a justice by the city council]; *Main v. Claremont Unified School Dist.* (1958) 161 Cal.App.2d 189, 194–195 [noting election and appointment usually have different meanings, but finding statutes at issue used " 'elect' " and " 'employ' " interchangeably], overruled on another ground in *Barthuli v. Board of Trustees* (1977) 19 Cal.3d 717, 721–722.)

Contrary to plaintiffs' suggestion, none of the cited cases establishes that the term "election" must always or even generally be read broadly to include appointment; that depends on the context and on legislative intent. We also reject plaintiffs' derivative contention that the drafters of the Alameda County Charter (ratified by county voters in 1926 and approved by the Legislature in 1927) (see Alameda County Charter) and the Alameda County Administrative Code (adopted in 1967) (see Alameda County Admin. Code, § 1.01.010), being aware of this case law, must have intended "election" in those documents to have a broad meaning that includes appointment.[11]

---

[11] The definitions provision of the Alameda County Administrative Code, section 1.04.030, which plaintiffs highlight in connection with this point, provides definitions of various terms but does not define "election." The provision states generally that words that are not given specific definitions "shall have their common and ordinary meaning which shall include the meanings determined by the laws of the state and the

Here, in our view, taking into account statutory purpose, the "more reasonable interpretation" (*Barrett, supra,* 61 Cal.2d at p. 106) of the requirement that a supervisor reside in the district "for a[t] least one year immediately preceding [the supervisor's] election" (Alameda County Admin. Code, § 2.04.020) is that it requires residency for a period preceding a supervisor's election by voters but does not impose a similar requirement for a supervisor appointed by the Board to fill a vacancy. We base this conclusion on our reading of *Johnson, supra,* 15 Cal.3d 461, and its discussion of the legislative purposes that will and will not justify a prior residency requirement for a local public official.

In its 1975 decision in *Johnson*, the California Supreme Court held invalid two provisions of the Long Beach City Charter requiring one-year prior residency in the city and six-month residency in the district for a city council candidate. (*Johnson*, *supra*, 15 Cal.3d at pp. 464, 472.) The court held the provisions, which impinged on the rights of candidates and voters, violated equal protection. (*Id.* at pp. 472, 468.) Two of the justifications advanced for prior residency restrictions were focused on "education—first, of the candidate regarding the issues, and second, of the electorate regarding the candidate." (*Id.* at p. 469.) But the court found these goals did not justify a "rigid" or "arbitrary" prior residency requirement. (*Id.* at pp. 470–471.)

The *Johnson* court concluded, however, that a shorter prior residency requirement (30 days) would be permissible, stating: "There do

decisions of the courts of the state." (Alameda County Admin. Code, § 1.04.030.) But again, since the case law does not establish one fixed meaning of the term "election," this provision does not support plaintiffs' assertion that the broader interpretation they favor has been incorporated into the code.

exist . . . 'compelling' reasons for a requirement that candidates for public office establish their residence, and eligibility for office, within a reasonable and fixed time prior to the election." (*Johnson, supra,* 15 Cal.3d at p. 472.) The court elaborated: " 'An orderly system of election laws crystallizes the issues and candidates during a given time-span before the election. During this period the election officials prepare and distribute sample ballots and print official ballots. During this period the candidates address their appeals to the voters. The latter, in turn, weigh the alternatives. They may rationally resolve their choices only by assurance that all the candidates are eligible.' " (*Ibid.*)

In light of these considerations, the *Johnson* court adopted the suggestion made in a prior opinion that "a public entity may constitutionally require a prospective candidate to be 'a resident at the time he files his nominating papers or equivalent declaration of candidacy and for a period of not more than 30 days next preceding such date of filing.' " (*Johnson, supra,* 15 Cal.3d at p. 472.) The court stated: "Such a 30-day prefiling residence requirement seems reasonably necessary and convenient to accommodate the needs of election officials in their task of timely verification of the candidate's true residence prior to the preparation and distribution of ballots. Accordingly, we hold that any durational residence requirement for candidates for local office in excess of the foregoing period is violative of the equal protection clause of the Fourteenth Amendment." (*Ibid.*)

As the trial court in the present case noted, the parties have not presented evidence or argument as to the purpose behind the one-year prior residency requirement in Alameda County Administrative Code section 2.04.020. The trial court, after stating that "[o]ne is left to

speculate why [the code] requires someone to live in the district they represent for at least a year prior to their election," suggested that "[i]t could be that the Board that enacted section 2.04.020 believed that individuals who reside in the district will have a deeper knowledge than those who lived elsewhere."[12]

Under *Johnson*, as noted, that possible legislative purpose— "education . . . of the candidate regarding the issues" (*Johnson, supra*, 15 Cal.3d at p. 469)—is an insufficient basis to impose a lengthy prior residence requirement for local public officials (*id.* at p. 470). The *Johnson* court explained: "The knowledge, appreciation, and comprehension of the public issues and problems which a candidate either possesses or may reasonably be expected to acquire are so much the product of the variables of motivation, intelligence, maturity, experience, opportunity, and desire as to make any flat rule of physical residence appear immediately suspect and arbitrary." (*Ibid.*) If the assumption that long-term district residents will be more knowledgeable is a shaky basis for requiring a prior residence period even for elected local public officials (*ibid.*), then in our view it does not support adopting a broad construction of Alameda County Administrative Code section 2.04.020 to apply its one-year prior residency requirement to appointed supervisors as well as elected ones.

---

[12] The trial court noted that, as a factual matter, this possible concern about knowledge of the district appears inapplicable here. Given that Brown had served for years as Supervisor Chan's chief of staff prior to his appointment, the trial court noted, "One may speculate that few would have a deeper knowledge of the issues facing District Three for purposes of serving on the Board."

23

The other "education"-related purpose for extended prior residence requirements that the *Johnson* court discussed—"education . . . of the electorate regarding the candidate" (*Johnson, supra,* 15 Cal.3d at p. 469)—is similarly "not served by a proscription so imperious as one based upon extended physical presence alone." (*Id.* at pp. 470–471; *id.* at p. 471 [the "advent of mass media" and other factors "reduce and dilute the expectancy that voter evaluation and education can best be served by an arbitrary residence requirement of the candidate"].) In addition, the assumed need for voter education about a candidate (even to the extent it might support a prior residence requirement for persons wishing to stand for election by voters) does not appear directly applicable to an appointment process where a public official (such as the Governor) or a group of officials (such as the Board) is tasked with temporarily filling a vacancy. The possible legislative goal of voter education thus provides no basis to construe Alameda County Administrative Code section 2.04.020's prior residence requirement broadly to apply to a person appointed to fill a vacancy on the Board.

As noted, the *Johnson* court found a shorter, 30-day prior residency period *would* be justified based on the needs of election officials and voters. (*Johnson, supra,* 15 Cal.3d at p. 472.) Requiring "candidates for public office" to "establish their residence, and eligibility for office, within a reasonable and fixed time prior to the election" (*ibid.*) allows time for " 'election officials' " to " 'prepare and distribute sample ballots and print official ballots' " (*ibid.*). In addition, " '[d]uring this period the candidates address their appeals to the voters. The latter, in turn, weigh the alternatives. They may rationally resolve their choices only by assurance that all the candidates are eligible.' " (*Ibid.*) A 30-day prefiling residence

24

requirement "accommodate[s] the needs of election officials in their task of timely verification of the candidate's true residence prior to the preparation and distribution of ballots." (*Ibid.*)

These concerns justifying a short prior residency requirement to facilitate an orderly election process do not appear to be directly implicated by an appointment procedure that tasks a small group of public officials with temporarily filling a vacancy. Although it may be necessary to verify the current residence of an applicant for a vacancy, there is no need for election officials to prepare and distribute ballots, or for voters to evaluate competing candidates. In any event, these election-specific considerations do not support construing the *one-year* prior residence requirement in Alameda County Administrative Code section 2.04.020 as applying to a person appointed to fill a vacancy.

As noted, we must interpret the prior residency requirement in Alameda County Administrative Code section 2.04.020 in a manner that "effectuate[s] the law's purpose[s]" (*Imperial Merchant Services, Inc. v. Hunt, supra,* 47 Cal.4th at p. 387), to the extent we can discern those purposes and to the extent they are valid. The need for a short preelection residence period to allow election workers to verify candidate residences and prepare ballots (the valid statutory purpose identified in *Johnson*) does not support broadly construing the statute at issue here to require a lengthy prior residency period for a person appointed to fill a vacancy on the Board.[13]

---

[13] In their supplemental brief, plaintiffs suggest that, if this court were to find that the one-year prior residency requirement in Alameda County Administrative Code section 2.04.020 is unconstitutional, we should treat the statute as imposing instead a 30-day prior residency

25

For these reasons, we disagree with a 1964 opinion by the Attorney General (cited by plaintiffs) that concluded a one-year prior residency requirement for a county supervisor applied to both elected and appointed supervisors.  (44 Ops.Cal.Atty.Gen. 159, 159, 161 (1964).)  In that opinion, the Attorney General addressed a provision of the San Mateo County Charter that stated a county supervisor must have certain listed qualifications and must also have " 'such other qualifications as are now or may hereafter be provided by general law . . . .' " (44 Ops.Cal.Atty.Gen., *supra*, at p. 159; see *id.* at p. 161.)  In turn, the "general law" governing residency requirements for county supervisors was former Government Code section 25041, which at that time provided in part:  " 'Each member shall have been an elector of the district which he represents *for at least one year immediately preceding his election*, and reside in the district during his incumbency.' " (44 Ops.Cal.Atty.Gen., *supra*, at p. 160, italics added.)

In applying these provisions to determine the residence requirements for appointment to a vacancy on the county board of supervisors, the Attorney General focused primarily on whether the one-year prior residence requirement in former Government Code section 25041 (which was incorporated into the applicable provision of the county charter) conflicted with, and therefore was superseded by, other portions of that charter provision.  (44 Ops.Cal.Atty.Gen., *supra*, at

requirement that would be appropriate under *Johnson*.  It is not our function to rewrite statutes.  In any event, as noted, we have not reached the question whether the prior residency requirement in Alameda County Administrative Code section 2.04.020 is unconstitutional, because we have concluded as a matter of statutory interpretation that the requirement does not apply to a person appointed to fill a vacancy on the Board.

26

pp. 159–161.) Finding no conflict, the Attorney General concluded former Government Code section 25041 supplemented the charter provision's express qualification requirements by imposing a one-year prior residence requirement. (44 Ops.Cal.Atty.Gen., *supra*, at p. 161.) And, citing the *Barrett* and *Reed* cases that we have discussed above, the Attorney General stated (without detailed discussion) that this prior residence requirement applies to appointed supervisors as well as elected ones. (44 Ops.Cal.Atty.Gen., *supra*, at p. 161.)[14]

The language of the one-year prior residence requirement in former Government Code section 25041 that was at issue in the 1964 Attorney General opinion (i.e., the requirement that a supervisor be an elector of the district " 'for at least one year immediately preceding his election' ") (44 Ops.Cal.Atty.Gen., *supra*, at p. 160) is the same language that is currently found in Alameda County Administrative Code section 2.04.020. But we decline to adopt the view expressed by the Attorney General in 1964 that this language imposes a one-year prior residence requirement for a person appointed to fill a vacancy on the Board.

First, as we have discussed above, we do not agree that *Barrett* or *Reed* stands for the proposition that the term "election" is always to be construed broadly to encompass an appointment, and we reject the

---

[14] The Attorney General, after finding there was no conflict between the provisions at issue, summed up his analysis as follows: "The charter requires that a supervisor shall have attained the status of a voter, and the general law, by its incorporation by reference in the charter, imposes an additional, supplementary requirement that a supervisor shall have been an elector for one year immediately preceding his election (or appointment, see *Barrett v. Hite*, 61 A.C. 83, 85–86 (1964); *Reed v. Hammond*, 18 Cal.App. 442, 445 (1912))." (44 Ops.Cal.Atty.Gen., *supra*, at p. 161.)

27

Attorney General's apparent view in the 1964 opinion that those cases provided a definitive answer to that question. (44 Ops.Cal.Atty.Gen., *supra*, at p. 161.) More importantly, in our view, the California Supreme Court's subsequent 1975 decision in *Johnson* requires us to construe the prior residence requirement in Alameda County Administrative Code section 2.04.020 more narrowly, to effectuate only the valid purpose of providing a short preelection time window for election workers to verify candidates' residences and prepare and distribute ballots. As we have discussed, this statutory purpose does not support construing the statute broadly to require that a person must reside in the district for one year before the Board may consider appointing him to fill a vacancy.

Finally, although it is not directly relevant to our interpretation of the current language of Alameda County Administrative Code section 2.04.020, we note that Government Code section 25041, which in 1964 contained an identically phrased one-year prior residence requirement (see 44 Ops.Cal.Atty.Gen., *supra*, at p. 160), was amended in 1978 to specify a shorter and differently measured prior residence requirement. Government Code section 25041 (a provision we discuss further in pt. II.B.2, *post*) currently states in relevant part: "[E]ach member [of a county board of supervisors] shall have been a registered voter of the district which he seeks to represent *for at least 30 days immediately preceding the deadline for filing nomination documents for the office of supervisor*, and shall reside in the district during his incumbency." (Gov. Code, § 25041, as amended by Stats. 1978, ch. 1287, § 30, p. 4214, italics added.) An Assembly committee analysis explains that the purpose of the change was "to bring [Government Code section 25041] into conformance with the decision of the State Supreme

28

Court in [*Johnson*]." (Assem. Com. on Elections and Reapportionment, Analysis of Assem. Bill No. 3294 (1977–1978 Reg. Sess.) p. 3.)

We are not persuaded by plaintiffs' remaining arguments in support of applying Alameda County Administrative Code section 2.04.020's one-year prior residence requirement (i.e., the requirement that a supervisor reside in the district for "a[t] least one year immediately preceding his election") to vacancy appointees. Plaintiffs suggest the Board's appointment of a supervisor to fill a vacancy is itself an "election" within the meaning of the statute because Board members vote on who will be the appointee. We disagree. As plaintiffs note, the term "election" may in some contexts encompass a selection by a small group of officials. (*Odell v. Rihn, supra,* 19 Cal.App. at p. 719.) But we find it unlikely that, when the Alameda County Administrative Code was adopted in 1967, the term "election" in what is now section 2.04.020 was intended to refer to Board votes on vacancy appointments. Prior to a 1986 amendment, section 8 of the Alameda County Charter, which governs vacancy appointments, provided that the Governor would fill vacancies on the Board until the next election.

Plaintiffs also assert that the term "election" in a different portion of Alameda County Administrative Code section 2.04.020, or in other statutes, should be read to encompass appointments. We need not address the parties' arguments on these points. Whatever their merits, there are unique considerations (which we have discussed above) that inform our interpretation of the term "election" in the portion of Alameda County Administrative Code section 2.04.020 that imposes a one-year prior residence requirement. To avoid constitutionality concerns, and to construe the statute in a way that effectuates its valid purpose of allowing

29

a short preelection preparation period, we interpret "election" in that provision as not applying to vacancy appointments.

## 2. The 30-Day Prior Residency Requirement in Government Code Section 25041

Plaintiffs contend as a backup argument that, if Alameda County Administrative Code section 2.04.020 did not prohibit Brown's appointment to the Board, then he failed to satisfy the 30-day prior residence requirement in Government Code section 25041. The trial court correctly rejected this argument.[15]

Government Code section 25041 states: "In all other cases[16] each member [of the board of supervisors] shall have been a registered voter of the district which he seeks to represent for at least 30 days immediately preceding the deadline for filing nomination documents for the office of supervisor, and shall reside in the district during his incumbency." This provision thus ties its prior residence requirement to a specific step in the process of election by voters. We agree with the Attorney General's opinion in this matter, which states: "Government Code section 25041 unambiguously applies only to elections by voters (and not appointments) because it ties the 30-day requirement (expressed as a voter-registration

---

[15] As the trial court noted, the Attorney General's office, in its opinion authorizing plaintiffs to bring this quo warranto action (based on the conclusion that some of plaintiffs' arguments were potentially meritorious), expressed skepticism about their argument under Government Code section 25041. (105 Ops.Cal.Atty.Gen., *supra*, at p. 115, fn. 17.)

[16] The "[i]n all *other* cases" language (Gov. Code, § 25041, italics added) refers back to an exception in Government Code section 25040 for board members in certain counties where districts have not been established, who are to be "elected at large and without regard to residence" (Gov. Code, § 25040). That exception is not relevant here.

requirement) to a deadline for filing documents in elections decided by voters." (105 Ops.Cal.Atty.Gen., *supra*, at p. 115, fn. 17.)[17]

Seeking to avoid this result, plaintiffs point to a passage in *Johnson*, where the California Supreme Court noted (and then agreed with) a suggestion in an earlier opinion that "a public entity may constitutionally require a prospective candidate to be 'a resident at the time he files his nominating papers or equivalent declaration of candidacy and for a period of not more than 30 days next preceding such date of filing.' " (*Johnson, supra*, 15 Cal.3d at p. 472.) Plaintiffs assert that statements made by Brown at the Board meeting on November 16, 2021 should be treated as an " 'equivalent declaration of candidacy' " within the meaning of this passage, and that he therefore had to be a district resident for 30 days prior to that date.

We disagree. As Brown notes, while *Johnson* outlined what is constitutionally permissible in this context, the Legislature then specified in Government Code section 25041 that the 30-day residency requirement is tied to "the deadline for filing nomination documents for the office of supervisor" (Gov. Code, § 25041) and did not refer more broadly to an "equivalent declaration of candidacy." The text of Government Code

---

[17] Because Government Code section 25041 by its terms does not apply to appointments, we need not address the parties' arguments as to whether this provision of general law applies to a charter county such as Alameda County. We also need not address Brown's contention that the Attorney General's authorization to bring this quo warranto action did not include authorization to bring a claim under Government Code section 25041.

31

section 25041 provides no support for plaintiffs' argument that it applies to vacancy appointments.[18]

## C. *The Continuous Residency Requirement*

The Alameda County Charter and the Alameda County Administrative Code both require that a supervisor reside in their district while in office (the continuous residency requirement). (Alameda County Charter, § 4 [supervisor "must be an elector of the district which he/she represents [and] must reside therein during his/her incumbency"]; Alameda County Admin. Code, § 2.04.020 [same].) Brown stated he moved into an apartment in Oakland on November 12, 2021 and registered to vote there. Plaintiffs contend, however, that Brown did not satisfy the continuous residency requirement during his 14-month term in office, because he did not intend to remain in Alameda County permanently or indefinitely and thus never became a true "domiciliary."

Statutory residency requirements (even those that use the general term "residence") often refer to the legal concept of "domicile." (E.g., *Walters v. Weed* (1988) 45 Cal.3d 1, 7 ["We have recognized that [Gov. Code, §§ 243 and 244] which use the term 'residence' actually mean '*legal* residence' or 'domicile,' and we have interpreted them accordingly"]; *Smith v. Smith* (1955) 45 Cal.2d 235, 239 (*Smith*).) The California Supreme Court explained in *Smith*: "Courts and legal writers usually distinguish 'domicile' and 'residence,' so that 'domicile' is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain

---

[18] We decline to address plaintiffs' argument, raised for the first time in their reply brief, that Brown's appointment violated Elections Code section 201 because he allegedly did not prove at the November 16, 2021 meeting that he was eligible to register to vote in District 3.

and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn. 'Domicile' normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time. [Citations.] But statutes do not always make this distinction in the employment of those words. They frequently use 'residence' and 'resident' in the legal meaning of 'domicile' and 'domiciliary,' and at other times in the meaning of factual residence or in still other shades of meaning." (*Smith*, *supra*, 45 Cal.2d at p. 239.)

In its opinion assessing the issues in this case as part of the quo warranto process, the Attorney General's office concluded (consistent with the arguments submitted to it by both parties) that "domicile" is the standard for determining whether a supervisor "reside[s]" in the district during their term, within the meaning of Alameda County Charter section 4 and Alameda County Administrative Code section 2.04.020. (105 Ops.Cal.Atty.Gen., *supra*, at pp. 116–117.) We agree and will apply the domicile standard here.

"The law presumes that a domicile, once acquired, continues until it is shown that a new domicile is acquired. [Citations.] At any given time, there can only be one domicile. (Gov. Code, § 244, subd. (b).) Once established, a domicile cannot be lost until another is gained. (*Id.*, at subd. (c).) Moreover, in order to change domiciles, there must be a union of act and intent. (*Id.*, at subd. (f); [citation].) Thus our courts have held that two elements are indispensable to accomplishing a change of

33

domicile:  actual residence in the new locality plus the intent to remain there."  (*DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268, fn. omitted.)

Plaintiffs contend Brown "never became a true 'resident' or domiciliary of Alameda County Board of Supervisors' District 3," because "he lived in Oakland for temporary purposes merely."  In its June 2022 opinion authorizing this quo warranto proceeding, the Attorney General's office outlined the evidence that Brown had submitted pertaining to his move to District 3 and whether he intended to remain there. (105 Ops.Cal.Atty.Gen., *supra*, at pp. 117–118.)  Brown stated in part that, when he moved to his friend's Oakland apartment in November 2021, his intention was " 'to make the Third District my permanent home for now.' "  (105 Ops.Cal.Atty.Gen., *supra*, at p. 118.)  He also stated he intended to continue living in Oakland at least until the end of his term as supervisor.  (*Ibid.*)  Brown stated his family would not be moving to Oakland but would remain at the Walnut Creek residence. (*Ibid.*)

The Attorney General's office stated that, based on the limited facts presented, it could not determine "whether Brown's acts and declarations are enough to satisfy the 'intent to remain' element of establishing one's domicile.  For example, although other conclusions are possible, it might reasonably be inferred that the circumstances of Brown's move indicate an intent to domicile in Oakland for a fixed but temporary period of time, with the eventual intent of returning to Walnut Creek."

(105 Ops.Cal.Atty.Gen., *supra*, at p. 119.)[19] The Attorney General expressed no view as to whether "such a scenario [would] comport with the legal principles governing an asserted change of domicile." (*Ibid.*) The Attorney General concluded, however, that "there are substantial issues of law and fact surrounding Brown's domicile during the term of his incumbency, and these issues warrant a judicial resolution." (*Ibid.*)

The Attorney General's office issued its opinion in June 2022, while Brown was still serving on the Board. (105 Ops.Cal.Atty.Gen., *supra*, at p. 111.) As noted, the trial court, addressing the matter in April 2023 (after Brown's term had ended), did not resolve the question whether Brown satisfied the continuous residency requirement, finding that issue to be moot.

We have concluded (in pt. II.A.2, *ante*) that the question whether Brown satisfied the continuous residency requirement should be resolved on the merits. But since that issue turns at least in part on the resolution of factual questions pertaining to Brown's acts and intent, we conclude it should be addressed in the first instance by the trial court. We will therefore reverse in part and remand for the trial court to address whether Brown satisfied the continuous residency requirement. On remand, the court may resolve any disputed factual matters and determine whether, on the facts so found, Brown was domiciled in District 3 during his term in office.

---

[19] The Attorney General's office emphasized that this was not the only permissible inference from the available evidence, and that additional evidence might be presented before the trial court. (105 Ops.Cal.Atty.Gen., *supra*, at p 119, fn. 40.)

**D.** *The Trial Court's Management of the Quo Warranto Proceeding*

Apart from their arguments as to the merits of the prior residency and continuous residency issues, plaintiffs claim the trial court prejudicially abused its discretion in conducting the quo warranto proceeding. Plaintiffs contend in part that the quo warranto matter did not proceed quickly enough; the trial court made case management decisions that effectively shifted the burden of proof to plaintiffs; and the court erred by first holding a hearing on the prior residency issue before proceeding to the continuous residency issue and finding it moot. In connection with these points, plaintiffs ask this court to opine on whether it is proper for a defendant in a quo warranto proceeding to serve discovery. Plaintiffs argue the trial court here erred by "supporting" Brown's "threats to propound discovery." Brown responds that much of the delay now attacked by plaintiffs was caused by their own actions or strategic decisions.

We need not address whether plaintiffs have shown any abuse of discretion by the trial court in managing the proceedings, because plaintiffs have shown no prejudice. As to plaintiffs' claim that Brown did not satisfy a prior residency requirement for his appointment to the Board, the trial court reached the merits of that issue and found, as a matter of law, that the statutes cited by plaintiffs do not impose a prior residency requirement in this circumstance. We have concluded on de novo review that the trial court was correct on that point. Any alleged delays did not deprive plaintiffs of a hearing and a ruling on the merits of this issue.

As to whether Brown complied with the continuous residency requirement during his term in office, we have determined that question

36

should be resolved on the merits as well due to the importance of the issue, and we are reversing in part and remanding for that purpose. We need not consider plaintiffs' suggestion that the trial court's alleged errors in managing the quo warranto proceeding provide a separate, procedural ground for reversal as well. And for the same reasons, we need not decide here the question plaintiffs raise about the propriety of discovery in a quo warranto proceeding.

## E. *The Denial of Plaintiffs' Motion for Judgment on the Pleadings*

Finally, plaintiffs contend briefly that the trial court erred by denying their December 29, 2022 motion for judgment on the pleadings. As noted, plaintiffs did not file that motion until after the court had received briefing and heard argument on the merits of the prior residency issue, which the court took under submission on December 6, 2022. Plaintiffs asserted in the motion that Brown's answer to the FAC was defective, that the evidence as to Brown's domicile during his term favored plaintiffs' position, and that the court should grant the motion as to Brown's "entire answer" and enter judgment in plaintiffs' favor. In its January 17, 2023 order finding in Brown's favor on the merits of the prior residency issue, the trial court found plaintiffs' motion was moot as a result of that ruling.

We find no error. Having ruled on the merits of the prior residency issue (following an expedited merits hearing requested by plaintiffs), the court was not obligated to revisit that ruling based on an alleged pleading defect in Brown's answer. And while the continuous residency issue was not resolved by the court's January 17, 2023 order, plaintiffs' motion did not purport to seek a partial judgment on the pleadings as to a portion of the case (such as a part of Brown's answer or a slice of the single,

37

undifferentiated cause of action in plaintiffs' FAC).  (See Code Civ. Proc., § 438, subd. (c)(2) [motion is to be directed to an entire complaint or any cause of action, or to an entire answer or one or more affirmative defenses]; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 452 [motion for judgment on the pleadings, like a general demurrer, ordinarily "does not lie as to a portion of a cause of action"].)  The court was not required to divine that plaintiffs wanted it to consider granting such unconventional relief.

## III. DISPOSITION

The judgment is affirmed in part and reversed in part.  We affirm the trial court's ruling that no prior residency requirement prohibited Brown's appointment to the Board.  We reverse the trial court's determination that the question whether Brown satisfied the continuous residency requirement during his term in office is moot.  The matter is remanded for further proceedings pertaining to that question.  The parties shall bear their own costs on appeal.

                                                            STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

38

Trial Court:        Superior Court of California, County of Alameda

Trial Judge:        Hon. Michael M. Markman, Hon. Harold Kahn

Counsel:            Law Offices of Jason A. Bezis and Jason A. Bezis for
                    Plaintiffs and Appellants.

                    Meyers Nave, Deborah J. Fox and Matthew B. Nazareth for
                    Defendant and Respondent.